**Eddie David COX, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Appellee.**

No. 77–1392.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1977.

Decided May 25, 1978.

Rehearing Denied June 21, 1978.

Bruce C. Houdek, Kansas City, Mo., for appellant.

Michael Kimmel, Atty., Dept. of Justice, Appellate Section, Civil Division, Washington, D.C., argued, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., Ronald S. Reed, Jr., U.S. Atty., Kansas City, Mo., and Leonard Schaitman, and Michael Kimmell, Washington, D.C., on brief, for appellee.

Before LAY, BRIGHT, and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Eddie David Cox brought this action against the Department of Justice and the Drug Enforcement Administration (DEA), an agency within the Department of Justice, to obtain disclosure of information he had requested under the Freedom of Information Act, 5 U.S.C. § 552 (1976). The district court ordered partial disclosure but denied further relief. Cox appeals. We affirm in part and remand for further proceedings.

I. *The Freedom of Information Act.*

■ Congress enacted the Freedom of Information Act (FOIA) for the express purpose of increasing disclosure of government records. According to the Senate Report accompanying the original version of FOIA passed in 1966,[1] the statute reflects "a general philosophy of full agency disclosure" and protects "the public's right to know the operations of its Government."[2] Congress amended the statute in 1974[3] to strengthen the disclosure requirement. The House Report on the amendments noted that "[t]his bill seeks to reach the goal of more efficient, prompt, and full disclosure of information."[4]

■ Section 552(a) of FOIA directs government agencies to disclose certain types of records and describes the manner of disclosure required. Subsection (a)(1) lists records that must be published in the Federal Register. Subsection (a)(2) lists records that must be made available for public inspection and copying. Subsection (a)(3) contains a catch-all provision requiring disclosure of records not covered by (a)(1) or (a)(2). These provisions are to be interpreted broadly to achieve the goal of full disclosure. *See Department of Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

■ Congress realized, however, that some confidentiality is necessary for the government to function. Section 552(b) therefore lists nine categories of records that are exempt from FOIA's disclosure requirements. The exemptions relevant to the present case are as follows:

(b) This section does not apply to matters that are—

\* \* \* \* \* \*

(2) related solely to the internal personnel rules and practices of an agency;

\* \* \* \* \* \*

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

\* \* \* \* \* \*

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D)

1. Freedom of Information Act, Pub.L. No. 89–487, 80 Stat. 250 (1966).

2. S.Rep. No. 813, 89th Cong., 1st Sess. 3, 8 (1965), *reprinted in* Senate Comm. on the Judiciary, 93d Cong., 2d Sess., *Freedom of Information Act Source Book: Legislative Materials, Cases, Articles* 38, 43 (Comm. Print. 1974).

3. Freedom of Information Act Amendments of 1974, Pub.L. No. 93–502, 88 Stat. 1561 (1974).

4. H.R.Rep. No. 93–876, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6267, 6271.

disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel[.]

The exemptions provided by subsection (b) "must be narrowly construed." *Department of Air Force v. Rose, supra,* 425 U.S. at 361, 96 S.Ct. 1592.

## II. *The Cox Requests.*

Cox, a convict presently confined at the federal penitentiary at Marion, Illinois, submitted two FOIA requests to the Justice Department in 1975.[5] In the first, he requested disclosure of his DEA "violator classification identifier"; in the second request, he sought a copy of the DEA Agents Manual. The Government denied these requests on grounds that the information was exempt from disclosure under FOIA.[6] Cox then brought this action, in which he asked the district court to enjoin the Government from withholding the requested records and to order production of the records.

At the district court's request, the Government submitted the records in question for *in camera* inspection. The Government also submitted affidavits by Frederick A. Rody, Jr., acting deputy administrator of the DEA, and Thomas M. Burton, a DEA special agent assigned to DEA's Freedom of Information Division, setting forth the reasons for the denial. After viewing the *in camera* materials and considering the Government's motion for summary judgment, the district court reached the following conclusion:

A thorough and painstaking study of the materials produced compels the conclusion that the violator classification number is exempt from disclosure because its disclosure may significantly impair law enforcement. And almost all of the Drug Enforcement Administration Agents' Manual is exempt from disclosure for the same reason and for the additional reason that some of the exempt material relates solely to the internal personnel rules and practices of the Drug Enforcement Administration in which there can be no public interest in disclosure.

---

5. Cox' status as a prisoner is relevant only because it helps explain his request for his violator classification identifier. Neither his status nor his particular interest in the information at issue can play any part in our consideration of his FOIA request, for "the Act precludes consideration of the interests of the party seeking relief." *Soucie v. David,* 145 U.S. App.D.C. 144, 154, 448 F.2d 1067, 1077 (1971). The Senate Report states that the Act

> eliminates the test of who shall have the right to different information. For the great majority of different records, the public as a whole has a right to know what its Government is doing. There is, of course, a certain need for confidentiality in some aspects of Government operations and these are protected specifically; but outside these limited areas, all citizens have a right to know. [S.Rep. No. 813, *supra* note 2, at 5 6.]

Professor Davis has stated that "required disclosure under the Act can never depend upon the interest or lack of interest of the party seeking disclosure" and that the "identity of the person seeking the information need not be revealed to the agency." K. Davis, *Administrative Law Treatise* 120-21 (Supp.1970). The Act therefore precludes us from speculating about what use Cox intends to make of the information if it is disclosed. The conclusions we reach in this case relate solely to possible uses by any member of the public.

6. The Government denied the first request because FOIA "does not require agencies to answer questions such as what type or class of violator you are." Upon administrative appeal, the Government clarified its reasoning and notified Cox that the information fell within exemptions (b)(2) (internal agency practices), (b)(5) (inter- and intra-agency communications), and (b)(7)(E) (investigatory records that would disclose investigative techniques and procedures). In district court, the Government limited its argument to (b)(2) and (b)(7)(E).

The Government denied the request for the Agents Manual on the ground that the manual was exempt under (b)(2) because it related solely to personnel rules and practices. In district court, the Government added the argument that the manual was exempt under (b)(7)(E) because it "provides a wide range of information to agents pertaining to investigative procedures."

The district court ordered disclosure of a subchapter entitled "Executive Clemency" but denied Cox' request for the other information.[7] Cox appealed.

### III. *The DEA Agents Manual.*

#### A.

Before deciding whether the exemptions in FOIA apply, we must first determine whether the FOIA disclosure requirements apply to this manual. If the material does not fall within one of the three categories contained in section 552(a), disclosure is not required.

Subsection (a)(1) lists the records that must be published in the Federal Register.[8] The Agents Manual does not fall within this category.

■ Subsection (a)(2) lists the records that must be made available to the public for inspection and copying.[9] These include the following:

> (C) administrative staff manuals and instructions to staff that affect a member of the public * * *.

The DEA Agents Manual is a "staff manual" and therefore is covered by subsection (a)(2)(C). Two circuit courts that have considered FOIA's application to somewhat similar materials agreed with this conclusion. *See Stokes v. Brennan,* 476 F.2d 699 (5th Cir. 1973) (material used to train OSHA compliance officers); *Hawkes v. Internal Revenue Service,* 467 F.2d 787 (6th Cir. 1972) (Internal Revenue Manual).

■ Subsection (a)(3) contains a catch-all provision that requires disclosure of records other than those covered by (a)(1) and (2).[10] Subsection (a)(3) creates a problem in interpreting FOIA: If (a)(2)(C) applies to the manual but does not require disclosure, does (a)(3) nevertheless require disclosure? We think not. We agree with the conclusion of Professor Davis, who has analyzed this problem and believes that the specific legislative intent behind (a)(2) controls the more general intent behind (a)(3):

> Even if none of the nine exemptions applies, some "records" may be free from

7. The Government later voluntarily disclosed a subchapter entitled "Legal." Although the district court ruled that "the agency need not undertake the time and expense of reproducing this subchapter for disclosure" for it "add[s] nothing to the generally published statutes and case reports which are available to plaintiff and to the public in general," the Government sent Cox' counsel a copy "in order to avoid needless controversy."

8. Subsection (a)(1) provides in relevant part:
> (1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—
> (A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;
> (B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;
> (C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;
> (D) substantive rules of general applicability adopted as authorized by law, and state-

ments of general policy or interpretations of general applicability formulated and adopted by the agency; and
> (E) each amendment, revision, or repeal of the foregoing.

9. Subsection (a)(2) provides in relevant part:
> (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—
> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and
> (C) administrative staff manuals and instructions to staff that affect a member of the public; unless the materials are promptly published and copies offered for sale.

10. Subsection (a)(3) provides in relevant part:
> (3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

required disclosure under (a)(3) because of the legislative intent behind (a)(2). [K. Davis, *Administrative Law Treatise* 56 (Supp.1976).]

Thus, we focus our inquiry on the question whether subsection (a)(2)(C) requires disclosure.

The original version of FOIA introduced into the Senate did not contain the word "administrative" before the word "manuals" in subsection (a)(2)(C).[11] The Committee on the Judiciary added that term for the express purpose of distinguishing "administrative matters" from "law enforcement matters." It explained the purpose of the amendment as follows:

> Amendment No. 1: The limitation of the staff manuals and instructions affecting the public which must be made available to the public to those which *pertain to administrative matters rather than to law enforcement matters* protects the traditional confidential nature of instructions to Government personnel prosecuting violations of law in court, while permitting a public examination of the basis for administrative action. [S.Rep. No. 813, *supra* note 2, at 2 (emphasis added).]

The distinction between law enforcement matters and administrative matters is not easily drawn. In *Hawkes v. Internal Revenue Service,* 467 F.2d 787 (6th Cir. 1972), the Sixth Circuit wrestled with this problem in the difficult context of an agency whose administrative actions frequently lead to law enforcement proceedings. Hawkes, a defendant in a criminal tax fraud case, requested copies of "portions of the Internal Revenue Manual relating to the examination of returns, interrogation of taxpayers by agents of the Service and other matters which Hawkes felt would be useful in preparing a defense." *Id.* at 789. The court gave the following analysis of (a)(2)(C):

> [I]t would seem logical to assume that the intent of the limit on (a)(2)(C) was to bar disclosure of information which, if known to the public, would *significantly impede* the enforcement process.

Law enforcement is the process by which a society secures compliance with its duly adopted rules. Enforcement is adversely affected *only* when information is made available which allows persons simultaneously to violate the law and to avoid detection. Information which merely enables an individual to conform his actions to an agency's understanding of the law applied by that agency does not impede law enforcement and is not excluded from compulsory disclosure under (a)(2)(C).

* * * * * *

> The exception for law enforcement materials contained in (a)(2)(C) is, as suggested above, a very narrow one and is to be applied only where the sole effect of disclosure would be to enable law violators to escape detection. Thus, for example, there is reason to exempt from compulsory revelation details of a selective enforcement policy made necessary by a lack of sufficient investigatory personnel. Similarly interrogation techniques or the mechanics of an F.B.I. "stakeout" arrangement properly could be excluded from disclosure under (a)(2)(C). [*Id.* at 795 (emphasis in original).]

On remand, the district court ordered the materials disclosed, and the court of appeals affirmed. *Hawkes v. Internal Revenue Service,* 507 F.2d 481 (6th Cir. 1974).

The Fifth Circuit applied a similar analysis in *Stokes v. Brennan,* 476 F.2d 699 (5th Cir. 1973), in which the plaintiff sought disclosure of all materials used in training OSHA compliance officers. The court ordered disclosure on the following reasoning:

> Secrecy can be justified in such a case as the one at bar only to the extent that it protects policies governing enforcement methods which, if disclosed, would tend to defeat the purpose of inducing maximum voluntary compliance by revealing classes or types of violations which must be left undetected or unremedied because of limited resources.

11. S. 1160, 89th Cong., 1st Sess., § 3(b)(C), 111 Cong.Rec. 2719 (daily ed. Feb. 17, 1965).

Our comprehensive *in camera* examination of the documents in question fully affirms the district court's conclusion that there is no support in fact for the government's contention that disclosure of this entire manual and associated documents would allow an employer to anticipate the matters which compliance officers would or would not cover in their investigations. [*Id.* at 702.]

The Attorney General has adopted the administrative-law enforcement distinction explained in *Hawkes*. After Congress amended FOIA in 1974, Attorney General Edward H. Levi sent a memorandum interpreting FOIA to executive departments and agencies. In that memorandum, he made the following comments about (a)(2)(C):

The 1965 Senate Report explained that the word "administrative" was added to the language of subsection (a)(2)(C) to *limit* the availability of staff manuals and agency instructions "to those which pertain to administrative matters rather than to law enforcement matters." (S.Rept. 813, 89th Cong., 1st Sess. p. 2) The purpose of this limitation was of course to prevent disclosure of information or techniques which if known in advance would render effective Government action more difficult. Accordingly, despite the legislative history as quoted above, the limitation has been held not to protect all law enforcement material but only that whose disclosure would significantly impede detection or prosecution of law violators. (See, e.g., *Hawkes v. I.R.S.,* 467 F.2d 787 (6th Cir. 1972).) Interpretation of the legislative history in this fashion should permit the word "administrative" to *exclude manuals and instructions which* do not deal with "law enforcement" in the strict sense of being violation-related; but which *deal with the performance of functions that would automatically be rendered ineffective by general awareness of agency techniques or procedures.* An example would be staff instructions pertaining to negotiating techniques in concluding procurement contracts or international agreements. The courts have understandably been

wary of extension of this limitation. In order to preserve the possibility of its use in nonviolation-related situations, agencies must scrupulously avoid invoking it except in situations such as those described, when the very function to be performed presumes secrecy as to the manner of its performance. [Att'y Gen. 1974 FOIA Amdts. Mem. 21–22, *reprinted in* House Comm. on Gov't Operations and Senate Comm. on the Judiciary, 94th Cong., 1st Sess., *Freedom of Information Act and Amendments of 1974 (P.L. 93–502), Source Book* 531–32 (Jt. Comm. Print 1975) (emphasis added).]

As further evidence that Congress intended to limit disclosure of information that would impede law enforcement efforts, we look to exemption (b)(7) relating to "investigatory records compiled for law enforcement purposes." In the 1974 amendments, Congress added limitations to that provision so that the exemption now applies only to the extent that disclosure would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

As we discuss below, (b)(7) does not apply directly to the present case. It does, however, demonstrate an intention by Congress to restrict public access to some law enforcement information, and the section serves as a practical guide for determining which information in the DEA Agents Manual may be withheld from the public.

 In addition, the DEA need not disclose the parts of the manual that deal with

mere "housekeeping" matters, such as instructions on filling out forms, procedures for requisitioning cars from the car pool, etc. These do not "affect a member of the public" and therefore are not covered by (a)(2)(C).

On the other hand, information clarifying substantive or procedural law must be disclosed. Professor Davis has made the following criticism of such "secret law":

I firmly believe that staff manuals or instructions in the nature of substantive or procedural law *should* be available. For instance, "guidelines for the staff in auditing" of tax returns ought to be open to the taxpayer to the extent that they tell the auditor the position of the Internal Revenue Service on any question of tax law. * * * [S]ecret law is an abomination. [K. Davis, *Administrative Law Treatise* 137 (Supp.1970) (emphasis in original).]

The Sixth Circuit in *Hawkes, supra,* 467 F.2d at 795, made the following comments:

Far from impeding the goals of law enforcement, in fact, the disclosure of information clarifying an agency's substantive or procedural law serves the very goals of enforcement by encouraging knowledgeable and voluntary compliance with the law. Such clarifying information is found in agency rulings made public; it is also found in many cases in manuals and instructions like those sought here which are addressed specifically to agency personnel. It may be found in the criteria for investigative action; in standards for evaluation and so forth. Materials providing such information are administrative in character and clearly discloseable under (a)(2)(C). [Footnote omitted.]

*See also Cuneo v. Schlesinger,* 157 U.S.App. D.C. 368, 372–73, 484 F.2d 1086, 1090–91 (1973). Unlike the manuals at issue in *Hawkes* and *Stokes,* which deal with the administrative regulation of conduct that usually is lawful, the DEA Agents Manual relates entirely to illegal drug transactions and therefore probably contains little material that would encourage "knowledgeable and voluntary compliance with the law."

■ Thus, FOIA does not require disclosure of any portions of the manual that relate to housekeeping matters or information that would impede law enforcement efforts. Any portions containing other information, including secret law, are subject to disclosure unless one of the exemptions applies.

### B.

In this case the Government resists disclosure on the grounds that the information in the manual falls within two FOIA exemptions:

(b) This section does not apply to matters that are—

\* \* \* \* \* \*

(2) related solely to the internal personnel rules and practices of an agency;

\* \* \* \* \* \*

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would * * * (E) disclose investigative techniques and procedures[.]

■ Exemption (b)(2) has a narrow scope. According to the Senate Report:

Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like. [S.Rep. No. 813, *supra* note 2, at 8.]

The Supreme Court in *Department of Air Force v. Rose, supra,* 425 U.S. at 363–64, 96 S.Ct. 1592, recognized this definition as an accurate reflection of Congressional intent.[12] Thus, (b)(2) exempts only "house-

---

12. In doing so, the Court also expressly rejected the much broader definition given in H.R. Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966).

The House Report was written after the Senate had passed the bill and therefore does not reflect the intention of the entire Congress. *De-*

keeping" matters in which "the public could not reasonably be expected to have an interest." *Id.* at 369, 96 S.Ct. at 1603; *Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 192, 523 F.2d 1136, 1141 (1975). Some of the materials in the DEA manual may fall within this exemption.

 Exemption (b)(7) applies only to investigatory records that are compiled in the course of a specific investigation. The mere fact that the staff manual of a law enforcement agency deals with investigative techniques and procedures does not place that manual within the scope of (b)(7). The 1974 amendments to FOIA greatly narrowed the scope of (b)(7). The Conference Committee Report explained that the exemption as amended

> would permit an agency to withhold investigatory records compiled for law enforcement purposes only to the extent that the production of such records would interfere with enforcement proceedings, deprive a person of a right to a fair trial or an impartial adjudication, constitute a clearly unwarranted invasion of personal privacy, disclose the identity of an informer, or disclose investigative techniques and procedures. [Conf.Rep. No. 93–1200, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6285, 6291.]

The Conference Committee considered the distinction between "staff manuals and instructions to staff" and "investigative techniques and procedures," and stated that exemption (b)(7) applies only to the latter:

> The conferees wish to make clear that the scope of this exception against disclosure of "investigative techniques and procedures" should not be interpreted to include routine techniques and procedures already well known to the public, such as ballistics tests, fingerprinting, and other scientific tests or commonly known techniques. Nor is this exemption intended to include records falling within the scope

of subsection 552(a)(2) of the Freedom of Information law, such as administrative staff manuals and instructions to staff that affect a member of the public. [*Id.*]

The Attorney General's memorandum explained the limits to (b)(7) even further:

> "Investigatory records" are those which reflect or result from investigative efforts. * * * Records of more general information-gathering activities (e.g., reporting forms submitted by a regulated industry or by recipients of Federal grants) developed in order to monitor, generally or in particular cases, the effectiveness of existing programs and to determine whether changes may be appropriate, should not be considered "compiled for law enforcement purposes" except where the purpose for which the records are held and used by the agency becomes substantially violation-oriented, i. e., becomes re-focused on preventing, discovering or applying sanctions against noncompliance with federal statutes or regulations. Records generated for such purposes as determining the need for new regulations or preparing statistical reports are not "for law enforcement purposes." [Att'y Gen. 1974 FOIA Amdts. Mem., *supra,* at 6.]

 We conclude that the (b)(7) exemption does not apply to the DEA manual, for the manual contains no information compiled in the course of an investigation.

C.

In light of the foregoing discussion, it is apparent that we cannot sustain the Government's position on nondisclosure of the Agents Manual for the reasons advanced in district court, because both the Government policy and the district court opinion are based on legal theories that we have rejected here. Our review is further hindered by the general and conclusory nature of the affidavits submitted by the Government to support its position.[13] We

---

partment of Air Force v. Rose, supra, 425 U.S. at 363 64, 96 S.Ct. 1592; *Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 193, 523 F.2d 1136, 1142 (1975).

13. We found the affidavits to be of little assistance in reviewing the agency decision. For example, the manual contains a section instructing agents on techniques of search and

also note that the Government has shifted its position during the course of this litigation and has retreated somewhat from its original sweeping policy of nondisclosure.[14] The Government's ambivalence suggests that it is uncertain about the validity of its policy of withholding virtually everything in the manual. Thus, we are in a position neither to affirm nor to reverse the district court's order respecting the Agents Manual.

Although the matter has been long delayed,[15] we conclude that the case must be remanded for further proceedings. The district court, while retaining jurisdiction over the matter, should refer Cox' request for the DEA Agents Manual to the agency for reconsideration of its disclosure policy in light of the principles enunciated in this opinion. The decision to release or not to release records rests in the first instance with the agency, which carries the burden of complying in good faith with FOIA. If the DEA, upon reconsideration, concludes that part or all of the manual should be released to Cox, it must release those portions.[16] If it chooses to withhold any parts

of the manual, it must articulate its reasoning with specificity, to the degree that it can do so without revealing, in the affidavit itself, the content of the material in question.

■ The district court "shall determine the matter de novo, and may examine the contents of such agency records in camera" to aid in its determination. 5 U.S.C. § 552(a)(4)(B). The role of *in camera* inspection, however, should be limited, for it is contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court. We agree with the observation made by the District of Columbia Circuit in *Weissman v. CIA*, 565 F.2d 692, 697 (D.C.Cir.1977):

> *In camera* inspections are burdensome and are conducted without the benefit of an adversary proceeding. *Vaughn [v. Rosen*, 484 F.2d 820] at 824. A denial of confrontation creates suspicions of unfairness and is inconsistent with our traditions.

seizure. Our examination gives rise to questions such as the following:
1) Do these instructions relate to tactics that must remain secret to be effective?
2) Are these techniques already known to *any person who has ever been arrested or* subjected to a search by law enforcement officers?
3) Do these instructions contain interpretations of law that affect the suspect's substantive rights?
If the answers are known by the DEA, it has not adequately communicated that information in the affidavits, which are general and conclusory in form. The Burton affidavit, for example, asserts that the release of information in a chapter relating to illegally manufactured drugs "could aid a potential violator in escaping detection by avoiding actions which trigger DEA's warning system." We can discern neither the nature of this "warning system" nor the type of actions that would trigger it. The affidavit also makes the following conclusory statement regarding a large number of subjects under the heading of "enforcement procedures": "The release of this material could reasonably assist a violator in escaping capture or detection." This statement does not aid us in determining which material could assist a violator and in what fashion.
**14.** On the administrative level, the Government relied on exemption (b)(2) (personnel rules and

practices). In district court it emphasized exemption (b)(7) (investigatory records compiled for law enforcement purposes). *See* note 6 *supra*. Although the district court held in its favor, the Government later voluntarily released a portion of the manual to Cox. *See* note 7 *supra*. In addition, after the district court entered judgment in the present case, the District Court for the Northern District of Georgia ordered disclosure of portions of the DEA Agents Manual in *Sladek v. Bensinger*, No. C–76–1678–A (N.D.Ga. Sept. 2, 1977), *appeal docketed*, No. 77–3247 (5th Cir.). The Government has informed us that although it has appealed the *Sladek* decision it has voluntarily released certain portions of the manual to both Sladek and Cox.

**15.** Cox made his first FOIA request in May 1975. He filed his complaint in district court in August 1976.

**16.** Subsection (b) allows the material to be segregated between portions to be disclosed and those to be withheld:
> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

The federal courts and federal judges are ill-suited to assume the role of super-administrator in FOIA cases. A court's primary role, therefore, is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position, utilizing an *in camera* examination of the manual itself as an aid in determining whether the Government's affidavits are accurate and made in good faith. If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency. *See Weissman v. CIA, supra,* 565 F.2d at 698. If, on the other hand, the agency is unable adequately to support its decision to withhold portions of the manual, the court must release that material.

### IV. *The Violator Classification Identifier.*

 The district court opinion describes the violator code as follows:

> The DEA violator classification identifier is a complex five (5) character alphanumeric identifier. Imbedded in the identifier are codes which designate the following:
>
> a. If case involves criminal activity.
> b. Agency or agencies involved in investigation.
> c. Geographical area.
> d. Drug involved.
> e. Priority of investigation.
>
> Although the identifier is coded, the general release of identifiers, which could be easily compared, would result in the "decoding" of the identifiers. This would reduce the usefulness of the entire violator classification system.

The district court concluded that disclosure would significantly impair the DEA's law enforcement efforts, and we agree. Subsection (a)(2) does not require disclosure. We therefore affirm on this issue.

### V. *Remand.*

We remand the case to the district court with directions to vacate its judgment relating to the DEA Agents Manual and to refer the matter to the DEA for further consideration in light of this opinion. The district court should retain jurisdiction over the case and should, upon action by the DEA, enter such order as may be appropriate and in conformity with this opinion.