**Joseph Patrick Thomas DOHERTY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, William French Smith, Roger B. Clegg, James K. Hall, and Lee F. Laster, Defendants.**

No. 84 Civ. 3197–CLB.

United States District Court, S.D. New York.

Oct. 30, 1984.

Mary B. Pike, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for the Southern District of New York by Thomas E. Moseley, Sp. Asst. U.S. Atty., New York City, for defendants.

MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff, Joseph Patrick Thomas Doherty, seeks to obtain certain records of the Federal Bureau of Investigation ("FBI") pursuant to the Freedom of Information Act ("FOIA"). This Court has subject matter jurisdiction pursuant to 5 U.S.C. § 552. The Government has moved pursuant to Rule 12, F.R.Civ.P. for an order dismissing this action, essentially for want of standing.

The Government asserts, and this Court assumes that plaintiff is a 29 year old British subject from the Six Counties, who entered the United States on a false passport in the early part of 1982 and found employment, residing here until his arrest more than a year later. According to the Government Memorandum submitted in support of this motion, Mr. Doherty belonged first to a youth gang, and at age 17 joined the Provisional Wing of the Irish Republican Army in its fight for independence. The Government goes on to inform the Court that while so engaged, Mr. Doherty was convicted for transporting explosives in a hijacked car. Released after serving five years in prison, Mr. Doherty was convicted of murder, sentenced to life imprisonment, escaped from prison and came to the United States as a fugitive. He is now resisting deportation and/or extradition. In a seven page description, Mr. Doherty is described in lurid detail as a terrorist, a liar, a smuggler of arms, an ambusher and a hostage-taker, who used a machine gun in a residential neighborhood, all apparently in what he regards as a fight for freedom and in support of a just cause. However, the Court is perplexed as to how these prior acts become relevant upon the construction of the FOIA or whether an undocumented resident alien may sue thereunder.

In June, 1983, plaintiff was apprehended by the Immigration and Naturalization Service ("INS"). On July 5, 1983 plaintiff wrote to the FBI and requested documents "retrievable in a search for files listed under [his] name." Plaintiff's request was made pursuant to 5 U.S.C. §§ 552 and 552a of the FOIA and the Privacy Act of 1974.

The Department of Justice denied plaintiff's request, asserting that its FBI records were exempt under 5 U.S.C. § 552(b)(7)(A), the subsection which protects from disclosure records compiled for law enforcement purposes, the production of which would interfere with enforcement proceedings. Upon administrative appeal, the Department of Justice affirmed the decision to deny plaintiff access to the agency records on that ground. Having exhausted his administrative remedy, plaintiff filed his complaint on May 8, 1984.

Rather than litigate the applicability of the claimed exemption from disclosure, the Government has chosen to move for dismissal of plaintiff's complaint under Rule 12(b)(1) and (b)(6). Its position is that the complaint fails to state a claim because an undocumented alien has no right to access to information under the FOIA. Thus the narrow issue presented to this Court is whether, under § 552(a)(4)(B), Doherty is able to sue at all.

Since 1966, when Congress enacted the FOIA, the Act has been interpreted to require broad disclosure. *Department of Air Force v. Rose*, 425 U.S. 352, 360–62, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976). The FOIA revised the public disclosure section of the Administrative Procedure Act, 5 U.S.C. § 1002, because Congress found that agencies were not disclosing sufficiently information which ought to be available to the public. S.Rep. No. 813, 89th Cong., 1st Sess. 3–4 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 1–6, *reprinted in* 1966 U.S. Code Cong. & Adm. News 2418, 2418–22 [hereinafter cited as House Report].

In order to achieve the goal of broad disclosure, the FOIA requires an agency to make information available unless it falls within one of the nine exemptions listed in § 552(b). *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1978). The list of exemptions is exclusive, 5 U.S.C. § 552(c), and the exemptions are to be narrowly construed. *Title Guarantee Co. v. NLRB*, 534 F.2d 484, 488–89 (2d Cir.1976). In sum, the basic policy of the Act is to promote public disclosure, not secrecy. *Department of Air Force v. Rose*, 425 U.S. at 361, 96 S.Ct. at 1599. Mindful of this Congressional purpose, this Court must consider the meaning of the statutory language defining who has a right to receive the Government's records, and who may complain to the district court when such access is denied.

■ Section 552(a)(3) states that "each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to *any person*" (emphasis added). Under established principles of statutory construction, this Court must first examine the language of the statute and give the statutory terms their ordinary meaning. "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

■ Section 552(a)(3) by its terms applies to "any person." Likewise, §§ 552(a)(1) and 552(c) refer to "the public." Section 552(a)(4)(B), the judicial review section, refers to the "complainant." Nothing in the literal language of the statute suggests that disclosure depends upon the status as to citizenship or residency of the person requesting information. Nevertheless, the Government contends that the FOIA restricts judicial review to American citizens. Because the Government disputes the ordinary meaning of the statutory terms, the Court will consult the legislative history of the Act, although no ambiguity is perceived. Congress knows the difference between "persons" and "citizens." Both terms appear frequently in legislation and in the Constitution itself. They are different in meaning, and the difference is well known.

One of the ways that Congress broadened the Government's disclosure obligations when it passed the FOIA was to eliminate at least one aspect of standing as a ground for resistance. Before 1966, the statute provided that records be made available to "persons properly and directly concerned except information held confi-

dential for good cause found." House Report, 1966 U.S. Code & Adm. News at 2421, quoting § 3 of the Administrative Procedure Act. The FOIA eliminated the "properly and directly concerned" or "none of your business" test or defense, partly because it was "relied upon almost daily to withhold Government information from the public." *Id.* at 2422. Eliminating this test also served to shift any emphasis from who was making the request, to whether the records themselves ought to be public information. As one commentator explained the Act's new text:

"The Act's sole concern is with what must be made public or not made public. The Act never provides for disclosure to some private parties and withholding from others. The main provision of section 3 says that information is to be made available 'to the public' and the central provision of subsection (c) requires availability of records to 'any person.' [U]nder the Act, Uncle Sam's information is either made public or not made public. The Act never requires it to be protected from all except those who have a special need for it." Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 765 (1967).

In adding to the textual change making records available to any person, Congress in 1966 provided no restrictive definition of the term "person." Unlike the Privacy Act of 1974, which states that "the term 'individual' means a citizen of the United States or an alien lawfully admitted for permanent residence," 5 U.S.C. § 552a(a)(2), the FOIA nowhere alters or limits the ordinary meaning of the term "person." Nor does the FOIA alter the earlier definitional section of the Administrative Procedure Act which states that a person is "an individual, partnership, corporation, association or public or private organization other than an agency." 5 U.S.C. § 551(2) (1977)[1]

---

**1.** The definition of "person" in 5 U.S.C. § 551 has continued in force through the 1966 enactment of the FOIA and its amendment in 1974. *See, e.g., Neal-Cooper Grain Co. v. Kissinger,* 385 F.Supp. 769, 776 (D.D.C.1974); *Stone v. Export-Import Bank of the United States,* 552 F.2d 132, 136 (5th Cir.1977).

Upon comparing the text of the FOIA with the text of the Privacy Act, this Court believes that the Congress, for whatever reason of its own, was aware of the difference between the terms "person" and "citizen," and intentionally chose the former for the FOIA and the latter for the Privacy Act.[2] Thus the definition in § 551(2) encompasses any individual, including plaintiff in the case at bar.

The reports of the Senate and the House of Representatives are replete with references to "any person" and "the public." The rationale behind the policy of disclosing records to anyone is that the public as a whole has a right to know how the United States Government is operating. House Report, 1966 U.S. Code Cong. & Adm. News at 2422. The objective of disclosure is to create an informed, intelligent electorate. *Id.* at 2429. This result or goal is independent of the status or citizenship of the person who actually makes the request or seeks relief from a denial of access. *See Cox v. United States Department of Justice,* 576 F.2d 1302, 1305, n. 5 (8th Cir. 1978).

Apparently, the thrust of the Government's argument is that notwithstanding the "any person" language of subsection (a)(3), Congress never intended to carry that language over to the judicial remedy section, 552(a)(4)(B). In other words, the Government asks the Court to conclude that even if broad disclosure may be had by any person, any person is not entitled to sue—citizens alone were provided the enforcement remedy if their requests were rejected without justification. This Court cannot interpret the FOIA in such a restrictive manner. There is nothing in the statute to suggest that the person to whom disclosure *must* be made under subsection (a)(3) is not the same person who may file a complaint under subsection (a)(4). To suggest otherwise assumes a wrong without a

remedy. If a person has the right to file a request under the FOIA, reason dictates that the same person must also have the right to file a complaint under subsection (a)(4)(B). The statute nowhere differentiates between the "person" entitled to receive disclosable information and the "complainant" entitled to sue.

Although the Government contends that "[t]he 1966 legislative history could not be plainer in limiting relief to citizens," for every reference to "citizens," provided in the Government's citations, there is to be found another equally significant reference to "person." For example, the House Report accompanying the proposed FOIA states that "[a]n aggrieved *person* is given the right to file an action in the district where he resides ...." [Emphasis added here and in the balance of the paragraph]. 1966 U.S. Code Cong. & Adm. News at 2426. Again in the Attorney General's Memorandum on the Public Information Section of the [Revised] Administrative Procedure Act, we find the following statement: "Any *person* from whom an agency has withheld a record after proper request under subsection (c) may file a complaint in the appropriate United States District Court." Staff of Senate Comm. on the Judiciary, 93rd Cong., 2d Sess., *Freedom of Information Act Sourcebook: Legislative Materials, Cases, Articles* 226 (Comm. Print 1974) [hereinafter cited as Sourcebook]. In the Senate debates on the FOIA, the Republican Policy Committee stated, "[u]nder this legislation, if a request for information is denied, the aggrieved *person* has the right to file an action in a U.S. District Court ...." Sourcebook at 59. Senate Report No. 89–813 states: "The aggrieved *person* can bring an action in the district court ...." Sourcebook at 43. While the Government is correct in noting that there are other similar statements which use the word "citizen," the Court does not find a clear legislative intention to

---

**2.** Under the Privacy Act, 5 U.S.C. § 552a (1977) an alien cannot gain access to agency records. *Raven v. Panama Canal Co.,* 583 F.2d 169 (5th Cir.1978). Thus it is clear that Congress could have restricted access similarly under the FOIA had it chosen to do so.

grant a right to sue to citizens rather than to persons.[3]

The relatively few cases in which this issue of standing has been raised have held that the complainant's identity or status has no bearing on whether the complainant has a right to request the Government records. For example, in *Moorefield v. United States Secret Service*, 611 F.2d 1021 (5th Cir.), *cert. denied*, 449 U.S. 909, 101 S.Ct. 283, 66 L.Ed.2d 139 (1980), the complainant had been twice convicted for threatening the life of the President. The court held that the convictions were irrelevant to Moorefield's right to see the requested file—"Moorefield may see the documents if *anyone* is allowed to do so by the FOIA." *Id.* at 1023, n. 2. (Emphasis in original).

In another case where the complainant was a prisoner, the Court of Appeals for the Eighth Circuit explained:

"Neither his status nor his particular interest in the information at issue can play any part in our consideration of his FOIA request, for 'the Act precludes consideration of the interests of the party seeking relief.' *Soucie v. David*, 448 F.2d 1067, 1077 (D.C.Cir.1971) .... The conclusions we reach in this case relate solely to possible uses by any member of the public." *Cox v. United States De-*

*partment of Justice, supra*, 576 F.2d at 1305, n. 5.

These and other similar cases reflect the view that what matters is the character of the requested information, not the identify of the requesting person.

Although the plaintiffs in *Moorefield* and *Cox* were both United States citizens, it is not at all clear that citizenship is a prerequisite to maintaining a FOIA action.[4] In *DeLaurentiis v. Haig*, 528 F.Supp. 601 (E.D.Pa.1981), *aff'd* 686 F.2d 192 (3d Cir. 1982), an Italian citizen residing in Italy was a plaintiff in an FOIA action. Although his co-plaintiff was his wife, a United States citizen, Mr. DeLaurentiis is named in the caption as a plaintiff and the court treated him as such.

In a slightly different context, a plaintiff has argued that Congress' intent in enacting one of the *exemptions* to disclosure was to protect only American citizens and not citizens of foreign countries. *Stone v. Export-Import Bank of the United States*, 552 F.2d 132 (5th Cir.1977). There the court held that the use of the term "person" in the FOIA is not limited to American individuals or organizations. *Id.* at 136. Therefore, information obtained from a Soviet Russian bank was information

---

**3.** During the hearings preceding enactment of the FOIA, the Congress did in fact receive notice that the use of the word "person" might bestow rights under the FOIA on aliens. The Comptroller General wrote to the subcommittee that "we believe the reference to 'any person' ... is too broad. We think that the individuals being given access to Government records should, at least, be citizens of the United States...." This advice was not heeded. Hearings on S. 1160 et al. before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, 89th Cong., 1st Sess. 376 (1965).

**4.** In *Neal-Cooper Grain Co. v. Kissinger*, 385 F.Supp. 769 (D.D.C.1974), a decision which goes beyond the plain meaning of the statute and which this Court does not accept as correctly decided, the court held that a foreign government was a "person" within the terms of the FOIA. *Id.* at 776. The request for information was made "by or on behalf of the Mexican Government." The 1974 debate in the House of Representatives reveals an intention not to extend a right of action to foreign governments:

"MR. ROUSSELOT. I thank the gentleman for yielding. Does this legislation mean that foreign governments or individuals from foreign governments will have the same kind of access as any American citizen, or is it just limited to American citizens?

I am referring especially in the case where an individual has to go to a court suit.

MR. MOORHEAD of Pennsylvania. The legislation says any person, that would exclude foreign governments.

MR. ROUSSELOT. What about a foreign ambassador or a foreign alien, say the Russian Ambassador?

MR. MOORHEAD of Pennsylvania. I would think if he had standing in a court as an individual, not as an ambassador, that he would have the same rights in connection with this; subject, of course, to the limitations provided in the original act." Staff of Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts, and Other Documents 241–42 (Comm. Print 1975).

"obtained from a person" within the meaning of 5 U.S.C. § 552(b)(4).

A recent decision concerning a FOIA request by a "citizens watch" group stated in *dictum* that:

"Under the Freedom of Information Act, the identity of the requester is immaterial; for example, there is no statutory bar to the military attache of the soviet embassy filing FOIA requests for information from the CIA and the FBI on the same basis as a United States citizen." *Military Audit Project v. Casey,* 656 F.2d 724, 730–31, n. 11 (D.C.Cir.1981)

That comment is of particular interest in this case, where the Government has argued that:

"Under the construction of FOIA implicit in Doherty's request, the head of the KGB could literally make a FOIA request for all FBI counter-intelligence files and then sue in federal court to enforce his view of FOIA. Congress could surely not have intended such an absurd result in order to vindicate the citizen's right to know." (Memorandum of Law in Support of Government's Motion to Dismiss and/or for Summary Judgment, at 12).

Such a case is not now before us; the KGB is not a "person," and presumably has or will obtain the information referred to through normal channels of espionage and leaks. It seems to have no need to rely on the FOIA.

Turning then to Doherty's status in the present action, there is no statutory basis for denying him the right to sue even though the Government contends that the FOIA is inapplicable to a "foreign terrorist [who] seeks to rummage through Government files." (Memorandum of Law in Support of Government's Motion to Dismiss and/or for Summary Judgment, at 12). If, as in *DeLaurentiis, supra,* a non-resident alien can file a complaint and litigate the applicability of the exemptions claimed by the requested agency, it does not appear to this Court that Mr. Doherty's status as an undocumented or "illegal" alien should create any special bar to suit. Indeed, it has been held recently that an excludable alien physically present within United States territory can claim protections of the Fifth and Fourteenth Amendments to the U.S. Constitution and enjoy access to the courts to enforce such rights. *Jean v. Nelson,* 711 F.2d 1455, 1484 (11th Cir.1983), *rev'd in part,* 727 F.2d 957 (11th Cir.1984) (*en banc*); *Fernandez-Roque v. Smith,* 567 F.Supp. 1115, 1125–26 (N.D.Ga.1983), *rev'd,* 734 F.2d 576 (11th Cir.1984).[5]

Finally, it appears that there is absolutely no bar to a friend or a journalist filing the FOIA request on plaintiff's behalf and then filing a complaint once the request has been denied. If "any member of the public" can request information and sue to enforce the federal government's disclosure obligations, *see NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136–37, 95 S.Ct. 1504, 1509–10, 44 L.Ed.2d 29 (1975), there is no reason why plaintiff cannot enjoy access to the courts in the country where he currently—albeit perhaps unlawfully—resides.

Congress having enacted this supposedly remedial legislation, it is the duty of the bureaucrats holding non-exempt information to comply with its provisions promptly and cheerfully unless and until the statute is revised by Congress, and it is the obligation of this Court to enforce compliance in the same vein when it is appropriate to do so. The legislative goals will not be served by engrafting on the statute's plain meaning, a judicial exception of the sort urged here; an exception which leads to delay and will require litigation of facts having nothing to do with the merits, such as the citizenship of a complainant or the validity of his green card. If the Government were to prevail on its motion here, in the next case, it will become a litigable issue wheth-

---

5. If plaintiff were able to fit into the definition of "refugee," the United States might have an international duty to provide him with access to its courts of law. Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 267, art. 16(3) (entered into force for the United States Nov. 1, 1968).

er a citizen complainant is not the real party in interest, because acting as a mere agent for an undisclosed illegal alien terrorist principal. Those who find the statute too costly and burdensome should address themselves to Congress rather than inventing new pleas in bar.

The Government's motion to dismiss the complaint is denied. A scheduling conference of counsel will be held before the Court on December 6, 1984 at 9:30 A.M. in Courtroom 705 to resolve any remaining issues in this case in order that a final judgment may be entered.

So Ordered.