**UNITED STATES of America, Appellee,**

v.

**Leonard PELTIER, Appellant.**

No. 83–1056.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1983.

Decided April 4, 1984.

Rodney S. Webb, U.S. Atty., D.N.D., Fargo, N.D., Evan L. Hultman, U.S. Atty., N.D.Iowa, Cedar Rapids, Iowa, Lynn E. Crooks, Asst. U.S. Atty., D.N.D., Fargo, N.D., Richard E. Vosepka, Asst. U.S. Atty., D.Minn., Minneapolis, Minn., for appellee.

William M. Kunstler, Mark B. Gombiner, New York City, John J. Privitera, Michael E. Tigar, Tigar, Buffone & Doyle, Washington, D.C., Bruce Ellison, Rapid City, S.D., for appellant.

Before HEANEY, ROSS and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

On April 18, 1977, a jury found Leonard Peltier guilty on two counts of first degree murder under 18 U.S.C. §§ 2, 1111, and 1114 (1982). He was sentenced to two consecutive life sentences. We affirmed the judgment of conviction on direct appeal. *United States v. Peltier*, 585 F.2d 314 (8th Cir.1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979). On April 20, 1982, Peltier filed a motion to vacate the judgment and for a new trial pursuant to 28 U.S.C. § 2255 (1976). On December 15, 1982, he filed a motion to disqualify the district court from considering his section 2255 motion; he also requested a new trial based on newly discovered evidence under Fed.R.Crim.P. 33. The district court denied his motion for disqualification, 553 F.Supp. 886, and his motions to vacate and for a new trial. 553 F.Supp. 890. The court made each of its rulings without benefit of an evidentiary hearing.

On appeal, Peltier's principal contention is that the district court erred in denying him an evidentiary hearing in which he could prove his substantive claims. He asks us to reverse the district court's denial of his motions on the merits and to remand the action to another district judge for a full evidentiary hearing. We affirm the district court's order denying Peltier's disqualification motion. Peltier's substantive claims raise more difficult questions.

The key to Peltier's motions is the relevance and interpretation of thousands of documents he received after trial via the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982), regarding the government's investigation of his case. He claims that many of these documents should have been produced and made available to him at his criminal trial under the dictates of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Given this focus of his section 2255 motion and the discretion which a district court possesses when ruling on a Rule 33 motion, we consider these two motions as essentially interchangeable. *See Lindhorst v. United States*, 585 F.2d 361, 365 n. 8 (8th Cir.1978). Thus, we need not address the serious question of the timeliness of Peltier's Rule 33 motion. *See* Fed.R.Crim.P. 33 (new trial motion "based on the ground of newly discovered evidence may be made only before or within two years after final judgment").

Peltier asserts that the FOIA documents he received raise many issues of fact relevant to his *Brady*/due process claims, but that we need not concern ourselves with all of them on appeal. As a result of this approach, he fails to detail each of the points on which he believes the district court should have granted an evidentiary hearing. He only explains one "illustrative and critical example" of the factual disputes raised by the FOIA documents. Besides this one example, Peltier would have us accept on faith his assertion that the FOIA documents raise questions about the fairness of his criminal trial. After a careful review of the decision below and the record on appeal, we find no error in the district court's decision to dismiss without a hearing all allegations of purported prejudicial concealment by the government save the one example detailed in Peltier's brief

and specifically argued to this Court. That example concerns the validity of FBI ballistics tests linking a .223 caliber bullet casing found during the investigation of the murders in question to an AR–15 rifle attributed to Peltier on the day of the killings.

The facts relating to the murders for which Peltier is now in prison are detailed in our earlier opinion on direct appeal. *United States v. Peltier, supra,* 585 F.2d at 318–320. In brief, Peltier and other members of the American Indian Movement (AIM) were being followed by FBI Special Agents Jack Coler and Ronald Williams as they drove into the Pine Ridge Indian Reservation in South Dakota on June 26, 1975. The AIM members were in a red-and-white pickup truck or van, and Coler and Williams followed in separate cars. The agents were looking for James Theodore Eagle in connection with a prior armed robbery and assault with a deadly weapon. The red-and-white vehicle stopped at a fork in the road, and Peltier and others allegedly exited the vehicle with weapons drawn and began firing at the FBI agents.

The evidence indicates that the agents were both outnumbered and underequipped for the ensuing exchange of fire. Both were wounded by distant fire as they crouched behind their cars, but the shots which ultimately killed each agent were allegedly fired at close range in execution style. Several AIM members fled the reservation soon after the killings. Peltier was arrested in Canada and extradited to this country in December of 1976.

The FBI investigation of these murders, referred to as RESMURS (short for "reservation murders"), uncovered numerous weapons and thousands of bullet casings and fragments. The casing of a .223 caliber bullet was found in the trunk of Agent Coler's car. The size and type of the casing matched the high velocity, small caliber characteristics of the weapon which fired the fatal shots killing both Coler and Williams. The casing was allegedly ejected into the open trunk of the car at the time of the killings. FBI firearms examiner Evan Hodge testified at Peltier's trial that this casing had been loaded into and extracted from an AR–15 rifle which had been recovered, albeit in damaged condition, after a car carrying several AIM members exploded on the interstate near Wichita, Kansas, on September 10, 1975. He stated that this opinion was based on a comparison of the microscopic characteristics of the extractor marks on the rim of the cartridge case made in late December, 1975, or early January, 1976. His extractor mark conclusion was described in a lab report, in evidence, dated February 10, 1976. He further stated that he could reach no conclusion as to whether the AR–15 had actually fired the bullet from that casing, apparently because the damage to the rifle in the car explosion marred the firing pin and breech face surfaces from which such a conclusion could be drawn. The government put on independent evidence linking Peltier to that AR–15 rifle on the day of the murders, even though he was not in the Wichita area when the gun was confiscated.

The importance of this bullet casing to the government's case against Peltier cannot be ignored. During argument to the jury at the close of the trial, counsel for the government stated, "One shell casing is ejected into the trunk of the agent's car which was open, one shell casing, perhaps the most important piece of evidence in this case. This little, small cartridge is ejected by the killers into the trunk of the car * * *." Tr. at 4996 (April 15, 1977). We recognized the importance of the casing in our opinion on direct appeal. We noted, "The .223 caliber cartridge casing allegedly found in the trunk of Coler's car was critical evidence against Peltier." *United States v. Peltier, supra,* 585 F.2d at 329.

Against this backdrop, Peltier raises one "critical example" of evidence in the government's possession prior to his trial which brings into question the weight, if not the truth, of the expert testimony linking the .223 casing to the Wichita AR–15. He cites an October 2, 1975, FBI teletype not available to him until his civil FOIA action after conviction, which reads in pertinent part:

RECOVERED .223 CALIBER COLT RIFLE RECEIVED FROM SA _____ BATF, CONTAINS DIFFERENT FIRING PIN THAN THAT IN RIFLE USED AT RESMURS SCENE.

Peltier alleges that this teletype indicates that the bullet casings found at the RESMURS scene, including the .223 casing found in Coler's trunk, had been tested against the Wichita AR–15 (.223 caliber colt rifle) and had come up negative. Such tests would have discredited Hodge's testimony that no conclusion could be reached from a firing pin analysis of the AR–15 because of its damaged condition, and would seriously have undermined the inference that the gun in fact fired the fatal bullets which the government urged the jury to draw from the positive extractor mark testimony given by Hodge.

Peltier's section 2255 claim is that the failure of the government to provide him with a copy of this teletype prior to his criminal trial denied him the due process protected by the fifth amendment to the United States Constitution. *See Brady v. Maryland, supra,* 373 U.S. at 85–86, 83 S.Ct. at 1195–1196. Whether the government's nondisclosure of *Brady* exculpatory material requires reversal depends on the nature of the material and the specificity of defense requests for disclosure: (1) if the undisclosed evidence demonstrates that the prosecution introduced testimony it had reason to know was perjured, the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury," *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (footnote omitted); (2) if a specific request for evidence was made by the defense, but such exculpatory evidence was not given, then the conviction or sentence must be overturned if the evidence "might have affected the outcome of the trial," *id.* at 104, 96 S.Ct. at 2398; and (3) if only a general request or no request for exculpatory evidence was made, then the prosecution's nondisclosure of such evidence will constitute constitutional error only if "the omitted evidence creates a reasonable

doubt that did not otherwise exist," *id.* at 112, 96 S.Ct. at 2402.

The district court considered the October 2 teletype as if it might evince perjured testimony and as if no request for its disclosure had been made—the first being the standard of review most favorable to the defendant. Under either standard, the court found that the teletype did not raise a new question not presented to the jury at trial, and therefore no evidentiary hearing was required to dismiss Peltier's due process claim. We quote from the court's memorandum and order:

> [P]etitioner has alleged that Special Agent Hodge intentionally misled the jury or more probably perjured himself when he testified at the trial of Peltier. Petitioner alleges that Hodge testified that a conclusive firing pin comparison between the .223, Ex. 34B, shell casing found in the trunk of Agent Coler's car, and the AR–15 rifle recovered from Wichita, Kansas, could not be performed due to the rifle's damaged condition, but that newly discovered evidence indicates that a firing pin comparison between the rifle and the .223 casing was in fact performed and produced negative results. The alleged newly discovered evidence is an October 2, 1975 FBI teletype included among the FOIA materials provided to petitioner.

> \* \* \* \* \* \*

> The teletype and an October 31, 1975 laboratory report authored by Hodge are obviously related. The laboratory report was received in evidence as Exhibit 135. It referred to tests done on some .223 shell casings and the AR–15 rifle, Exhibit 34A. The October 31, 1975 laboratory report appeared to be inconsistent with a February 1 [sic], 1976 laboratory report also authored by Hodge which referred to tests done on shell cases recovered from the general RESMURS area. Exhibit 34B, found in the trunk of Special Agent Coler's automobile, was specifically covered in the report. The court allowed the inconsistent earlier report to

be received in evidence and go to the jury even though defense counsel declined to give Hodge a Rule 613(b), Federal Rules of Evidence, opportunity to explain the discrepancy. Because the inconsistent report was admitted, even though inadmissible under the rule, the court did not permit defense counsel to argue the discrepancy. The jury in its consideration of the inconsistent reports could have concluded on the basis of Hodge's testimony that the .223 shell casings referred to in the October report did not include the casing, Exhibit 34B, found in the trunk of Coler's automobile. Petitioner's allegation that Hodge gave perjured testimony is a clear misstatement of the record and is obviously without substance or materiality.

*United States v. Peltier*, 553 F.Supp. 890, at 895–896 (D.N.D.1982).

The court made a similar analysis under the "no request/reasonable doubt" standard. *Id.* at 903. Based on the conclusion that the October 2 teletype raised no more of an inconsistency than the October 31 report, which was before the jury, the court found no need for an evidentiary hearing on the matter.

We agree with the court insofar as its interpretation of the teletype, and the interpretation pressed on appeal by Peltier, is concerned. That interpretation—that a firing pin test was done on the .223 casing with the AR–15 firing pin before October 2, 1975, and it proved negative—is not the only one which can be drawn from the October 2 teletype, however. Indeed, if this were the only interpretation which could be drawn, then that discrepancy had already been put before the jury and we would find no need for further consideration of the issue.

The teletype does not simply say that the firing pin test came up negative, however—it says that the AR–15 "contains [a] *different* firing pin than that in [the] rifle used at [the] RESMURS scene." [Emphasis added.] This language raises several possibilities not considered by the district court and not as readily explained away by the record as it presently exists. For example, the use of the word "different" could indicate that the FBI knew the firing pin in the damaged AR–15 had been changed after the June 26, 1975, murders. Such a discrepancy can be found nowhere else in the record, and could raise questions regarding the truth and accuracy of Hodge's testimony regarding his inability to reach a "conclusion" on the firing pin analysis and his positive conclusion regarding the extractor markings.

We do not mean to imply that the October 2 teletype establishes that the motives or actions of any FBI agent or government prosecutor were improper. Further investigation into this matter may simply show that the use of the word "different" in the teletype was an inaccurate way of expressing exactly what the October 31 laboratory report said—that the AR–15 could not be positively matched with any of the casings which had been tested at that time based on firing pin comparisons. We think it inappropriate, however, to simply assume this resolution of the new discrepancy raised by the October 2 teletype without hard evidence one way or the other.

Section 2255 clearly expresses a preference for evidentiary hearings "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (1976). We have recognized such preference in holding that "a hearing must be granted when the facts alleged in the motion would justify relief, if true, or when a factual dispute arises as to whether or not a constitutional right is being denied." *Smith v. United States*, 635 F.2d 693, 696 (8th Cir. 1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1397, 67 L.Ed.2d 368 (1981); *accord Lindhorst v. United States, supra*, 585 F.2d at 364–365. In our view, the language of the October 2 teletype raises factual questions bearing directly on Peltier's legal claim that the government denied him due process in withholding the teletype from him prior to his trial. At the very least, section 2255 affords him the opportunity to adduce evidence to support such a legal contention.

In light of this item of evidence not sufficiently explained by the files and records, we remand to the district court for an evidentiary hearing. At this hearing, the court shall limit its consideration to any testimony or documentary evidence relevant to the meaning of the October 2, 1975, teletype and its relation to the ballistics evidence introduced at Peltier's trial. The court shall then rule on whether the evidence adduced below supports Peltier's contention that its nondisclosure violated the *Brady* doctrine, requiring a new trial. Any appeal properly brought from the court's decision shall be handled on an expedited basis and docketed for reconsideration by this panel.