**UNITED STATES of America, Appellee,**

v.

**Frederick D. KRAEMER, Appellant.**

**No. 86–5258.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 1, 1986.

Decided Jan. 26, 1987.

Frederick Dale Kraemer, Fargo, N.D., pro se.

Lynn E. Crooks, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before McMILLIAN, ARNOLD, and BOWMAN, Circuit Judges.

PER CURIAM.

Appellant Frederick Kraemer appeals the district court's [1] denial of his 28 U.S.C. § 2255 motion for vacation of his sentence. For reversal, Kraemer argues that there is newly discovered evidence that the prosecution's major witness perjured himself, that the prosecution knew or should have known of the perjury, and that the prosecution withheld material exculpatory evidence from him. He also argues that the district court erred in refusing to grant him an evidentiary hearing on his claims, and that it erred in not making an explicit finding about whether the ends of justice would be served by allowing him to raise the same issue in his § 2255 motion that previously was decided on direct appeal. We affirm.

## I.

Kraemer was convicted on April 23, 1984, of violations of 18 U.S.C. § 2314 (interstate transportation of property known to be stolen, converted, or taken by fraud), 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 371 (conspiracy). He appealed the convictions and the denial of his motion for new trial to this court, which affirmed his convictions. *United States v. Kraemer,* 767 F.2d 929 (8th Cir.1985).

The facts of the case are rather complicated. In the fall of 1982, appellant was a practicing attorney in Fargo, North Dakota. He was asked to take over the case of Marie Michaeloff, who was in prison on shoplifting charges in Minnesota, in an attempt to obtain a post-conviction release. Kraemer negotiated with Marie's husband, Dale Michaeloff, who was a travel agent. It is not at all clear what Kraemer said his fee would be—anywhere from $10,000 to $30,000. Michaeloff purportedly said that

---

1. The Honorable Paul Benson, Senior United States District Judge for the District of North Dakota.

he did not have any cash to pay Kraemer, but that he could give him some airline tickets as "collateral."[2] There is considerable dispute about what happened next. Kraemer obtained about $40,000 worth of tickets to various destinations in the names of himself, his family, his girlfriend Charlotte Skjonsby, a/k/a Charlotte Mees,[3] and her family. Kraemer claimed that Michaeloff had simply given him the tickets, and that he (Kraemer) did not know that there was anything wrong with them. Michaeloff claims that he agreed to write up the tickets but only to give photocopies to Kraemer, which he could hold as proof of the collateral. Michaeloff testified that Kraemer came to the Dollar Travel Agency in Minneapolis, Minnesota, where he was working, and stole the actual tickets while Michaeloff was waiting on a customer. Michaeloff also testified that he had nothing to do with any larger scheme to defraud the airlines. (T. 278–79).

This is the testimony which Kraemer claims was perjured.[4] What is not disputed is that the airlines never have received payment for the tickets. It is also undisputed that Kraemer took the tickets back to Fargo, North Dakota, and that he and his girlfriend began submitting the tickets to the airlines for cash refunds. Some of the refunds were obtained through the mail, with letters giving false reasons why the tickets could not be used. They received over $35,000 in refund checks, which were deposited in Kraemer's bank account.

Kraemer was able to cash these tickets in, although the airlines had never been paid for them, because of the complicated process by which the individual airlines receive money from travel agents. At the time of the events described above, a division of the commercial airlines trade association known as the Air Traffic Conference of America (ATC) accredited all travel agencies, collected money from them for all the tickets they sold, and then disbursed the money to the individual airlines.[5] After a travel agent was approved by ATC, ATC sent it blank airline ticket stock, and each airline provided it with a validation stamp. The travel agency was supposed to guard this blank ticket stock very carefully and to use it strictly in numerical order. Each week, the travel agent sent a report to ATC listing each ticket issued. The money paid for the tickets, minus the agency's commission, was supposed to be deposited in a designated bank account. The agreement between the travel agency and ATC authorized ATC to withdraw the amount of money given in each report from this account. ATC then distributed it to the airlines. All this took some time. Once the ticket was issued with the proper airline validation stamp on it, the airline would honor it, either for travel or for a refund, presuming that the holder could not have obtained it without paying for it.

On July 12, 1983, Kraemer met with two North Dakota Crime Bureau agents to talk about a matter unrelated to this case. At the meeting, he told them he knew about something that would "knock their socks off." The next day, and at numerous later meetings with state and federal agents, he said that his clients, the Michaeloffs, were involved in a huge "ticket scam" in which their travel agency, Dollar Travel, issued hundreds of thousands of dollars worth of airline tickets, did not pay ATC for them, and then went bankrupt. Kraemer claimed at trial that he did not know about this scheme until December 1982, after he had

2. There was testimony from Marie Michaeloff's former lawyer that he had not been able to get full payment from the Michaeloffs, and that he told Kraemer that they had no money when he handed over his files on the case.

3. Skjonsby was a co-defendant in the case. She pled guilty to one count of the indictment.

4. Kraemer also asserts that Skjonsby perjured herself. At the trial she testified that Kraemer

forged her signature on one of the refund checks; at her sentencing hearing she testified that his secretary did it. Kraemer has no new evidence on this point, and even if true it would not have made a difference in the result.

5. The same functions have been performed by the Airlines Reporting Corporation, Inc., since January 1, 1985.

cashed in his tickets. In one interview with FBI agents, however, he admitted that he knew when he took the tickets that there was something wrong with them. He did in fact cash in at least one ticket in 1983. Dollar Travel Agency closed in mid-October 1982. In the three weeks preceding the closing, the agency issued about $440,000 worth of tickets, including the ones given to Kraemer. The agency sent reports on the tickets to ATC, but never deposited any money to pay for them. Garrett Barry, the owner of Dollar Travel, testified at Kraemer's trial that he had the money but did not deposit it because he had some lawsuits pending against ATC. At the time of Kraemer's trial, Barry was under investigation by the FBI. He took the fifth amendment when asked what had happened to that money.

The airline ticket scam did not end in 1982. Airlines Reporting Corporation (ARC), the successor to ATC, filed a suit in federal court in Minnesota in 1985, alleging civil RICO violations and fraud in the issuance of airline tickets. The defendants are Dollar Travel, Garrett Barry, the Michaeloffs, Kraemer, and other travel agencies and individuals. ARC alleged that in September and October of 1982 and between February and June of 1985 the travel agency defendants had issued airline tickets worth over $3 million without paying ARC for them. The agencies then went out of business. The district court granted a preliminary injunction against all the defendants restraining them from committing any further fraud against ARC and the airlines. This order is now on appeal in this court (Nos. 86–5138 and 86–5155), with argument having been heard in December 1986.

As newly discovered evidence of Dale Michaeloff's perjury, Kraemer offered a copy of a long affidavit submitted in the civil suit by William Z. Pentelovitch, ARC's attorney. The affidavit summarizes his knowledge of the ticket scam based on extensive discovery in state court suits, which still are pending. Kraemer also submitted an eighty-one page "summary" of evidence obtained from ATC and ARC.

This consisted primarily of lists of the tickets reported sold by four travel agencies (including Dollar Travel) but for which funds were never remitted.

The affidavit and other documentation indicate that Dale Michaeloff probably was a major player in the scheme, but ARC has never been able to obtain service on him, and he has not been deposed. Kraemer argues that this new evidence shows that Michaeloff had a strong motive to lie about Kraemer's actions, and that if the jury had known of it, they would have decided his case differently. Kraemer contends that the government's case depended on proof that he actually stole the tickets from the travel agency. Kraemer asserts that in order to convict him, the jury must have believed that Michaeloff was an innocent businessman trying to help his wife, and that all of his testimony was truthful.

A review of the transcript, however, shows that the government did not rely only on this theory. In his closing argument, the prosecutor pointed out to the jury that they could find Kraemer guilty whether they believed Michaeloff's version or not, because even if Kraemer did not steal the tickets from Michaeloff, the evidence showed that he knew that they had been "stolen, converted, or taken by fraud," 18 U.S.C. § 2314, and that he nevertheless transported them across a state line and used the mail to obtain cash refunds for them. (T. 712–13, 716). A review of the transcript shows that there was a great deal of conflicting testimony from Kraemer, Michaeloff, and Barry, and the jury well may have believed that they were all lying. Kraemer's assertion that he took the tickets and requested refunds on them in complete ignorance of any wrongdoing is not very plausible in the first place, given the circumstances, and it did not stand up at all well under crossexamination.

After his conviction, Kraemer filed a motion for new trial based on newly discovered evidence. The motion was denied as without merit and he appealed this denial in

his direct appeal of the conviction. The newly discovered evidence he submitted at that time consisted of copies of other fraudulent airline tickets that he claimed were filled out by Dale Michaeloff, and other documents intended to show that Michaeloff himself was one of the principals in the ticket scheme. The evidence was thus somewhat different, but it was intended to show the same thing that Kraemer now seeks to show, namely, that Michaeloff committed perjury at Kraemer's trial. Appellant has made the same argument before, both in his motion for new trial and on direct appeal.

## II.

Appellant cannot raise the same issues in a § 2255 petition that have been decided on direct appeal or in a new trial motion, *United States v. Gaus,* 751 F.2d 1506, 1507 (8th Cir.1985) (per curiam); *United States v. Sanders,* 723 F.2d 34, 36 (8th Cir.1983) (per curiam). Kraemer recognizes this in his brief, but argues that the court should consider his motion because there is a substantial amount of newly discovered evidence—the Pentelovitch affidavit and the summary of information obtained from ARC. While it is true that this evidence is new and was not available earlier, it is merely cumulative. Kraemer argues that when the district court refuses to hear a § 2255 petition on grounds that the issues were previously decided, it must make a finding that the "ends of justice would not be served" by allowing reconsideration. He bases this argument on *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), a case involving successive § 2255 motions. It is far from clear that *Sanders v. United States* requires such a finding. Even if we accept the argument that it does, a rehearing in Kraemer's case is not necessary because the new evidence merely reinforces evidence considered before.

Even if we consider Kraemer's arguments on their merits, he is not entitled to relief. One of his arguments is that the district court erred in refusing to grant him

an evidentiary hearing to determine the truth and materiality of his allegations, based on newly discovered evidence that Michaeloff committed perjury at his trial. Kraemer cites *Lindhorst v. United States,* 585 F.2d 361 (8th Cir.1978), for the proposition that when newly discovered evidence is the basis for a § 2255 motion, the petitioner should prevail if the evidence meets the requirements for granting a new trial motion based on newly discovered evidence. The requirements are:

> (1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Lindhorst,* 585 F.2d at 365 n. 8 (quoting *United States v. Pope,* 415 F.2d 685, 691 (8th Cir.), *cert. denied,* 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1969)). Appellant has not shown that his voluminous new evidence is not "merely cumulative or impeaching," and, most importantly, he has not shown that if a new trial were held, it probably would result in an acquittal. At a second trial, if Michaeloff's testimony were thoroughly impeached, Kraemer probably still would be convicted. His own lack of credibility as a witness, the testimony of law enforcement personnel about his admissions, his knowledge that the Michaeloffs had no money, the very high dollar value of the tickets in relation to his fee, and certain other facts would probably have convinced the jury that he knew the tickets were obtained by fraud. That is all that is required by the statute under which he was convicted:

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ... shall be fined not

more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 2314.

" '[An evidentiary] hearing must be granted when the facts alleged in the motion would justify relief, if true....' " *United States v. Peltier,* 731 F.2d 550, 554 (8th Cir.1984) (per curiam) (quoting *Smith v. United States,* 635 F.2d 693, 696 (8th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1397, 67 L.Ed.2d 368 (1981)). If the facts alleged in Kraemer's motion were proven true, it would not prove him innocent. It would only prove that Michaeloff was also guilty of criminal acts and would not entitle Kraemer to any relief.

 Kraemer also argues that his conviction should be overturned because the prosecutor failed to disclose material exculpatory evidence to him as required by *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). This argument also fails, for two reasons. First, although impeachment evidence does fall within the *Brady* rule, *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), the evidence is only "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 105 S.Ct. at 3384. *Accord United States v. Peltier,* 800 F.2d 772, 777 (8th Cir.1986). As was noted above, even if the defense had been able completely to discredit Michaeloff, the jury likely would have found Kraemer guilty anyway. In addition, Kraemer does not actually allege that the prosecutor *had* evidence of Michaeloff's participation in the ticket fraud. He argues that the information was "available" to the government and that they "could have checked" Michaeloff's story by requesting business records (ticket sales reports submitted by Dollar Travel) from ARC. At the time of the trial, Garrett Barry already was under investigation by the F.B.I., and the prosecutors' closing arguments and their questioning of Michaeloff indicate that they were suspicious about his story. However, Kraemer has not shown that they had in their possession any hard evidence that Michaeloff was part of the ticket scam, or that they knowingly allowed him to lie on the witness stand. The government is not required to search out exculpatory evidence for the defendant. *United States v. Riley,* 657 F.2d 1377, 1386 (8th Cir.1981).

For the above reasons, the judgment of the district court is affirmed.