**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

R. KEITH NEELY,
Plaintiff-Appellee,

v.                                                      No. 99-1128

FEDERAL BUREAU OF INVESTIGATION,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-97-786-7)

Argued: January 24, 2000

Decided: March 30, 2000

Before WILKINSON, Chief Judge, and LUTTIG
and MOTZ, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Luttig wrote the
opinion, in which Chief Judge Wilkinson and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** August Edward Flentje, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellant. Marvin David Miller, Alexandria, Virginia, for
Appellee. **ON BRIEF:** David W. Ogden, Acting Assistant Attorney
General, Robert P. Crouch, Jr., United States Attorney, Leonard
Schaitman, Appellate Staff, Civil Division, UNITED STATES

DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.
Max Jenkins, JENKINS & JENKINS, Radford, Virginia, for Appellee.

_____

**OPINION**

LUTTIG, Circuit Judge:

The district court ordered the public release of appellee R. Keith Neely's unredacted FBI file, rejecting the FBI's attempted withholding of portions of Neely's file under Exemptions 7(C) and 7(D) of the Freedom of Information Act, 5 U.S.C. § 552, and the FBI appeals. Because we conclude that the FBI may be entitled to withhold significant portions of Neely's file under either Exemption 7(C), 7(D), or both, we vacate the judgment below and remand for further proceedings in the district court.

I.

R. Keith Neely, a federal prisoner, brought the present complaint, seeking to enjoin the FBI to comply with his request under the Freedom of Information Act (FOIA) for "all information pertaining to [him]" that exists in the FBI's files. J.A. 16. According to Neely, he needed the information to prove that a key government witness, Michael Giacolone, had perjured himself at Neely's criminal trial. In response to the district court's order to expedite the processing of Neely's FOIA request, the FBI provided Neely with 796 of the 1,386 pages deemed "responsive" to Neely's request. A significant number of these pages were heavily redacted.

Two months later, the district court held a hearing on Neely's various procedural and non-dispositive motions. Shortly before this January 8, 1999 hearing began, the FBI submitted a twenty-two-page affidavit on its own initiative explaining, in a general fashion, the reasons for its withholding and redaction of information in Neely's file pursuant to various FOIA Exemptions. J.A. 190-209. Finding the affidavit to be too general and conclusory, the district court ordered the FBI to produce the entire file, unredacted, by January 22, for in-

2

camera review by the court. After reviewing the first 50 to 100 pages of each of the six packets of documents submitted by the FBI, most of which simply had only the conclusory notations"7(C)" or "7(D)" written on them, the district court on January 25 ordered the entire unredacted file to be made available for inspection and copying in the clerk's office on January 29, with the exception of those documents as to the withholding of which the FBI provided detailed, specific justifications. On January 28, we stayed the order pending appeal.

## II.

The district court was clearly frustrated with the FBI over its failure to provide reasoned and particularized explanations for its withholding of requested documents and we do not doubt that this frustration was warranted. Confining ourselves to the district court's stated reasons for denying the FBI's claimed Exemptions, however, it appears that the district court grounded its denial largely on the FBI's failure to articulate the justification for its withholdings with sufficient specificity, a matter on which we are essentially in agreement with the district court and which we address below. It also appears, however, that the district court may have rested its denial at least in part on the belief that Exemptions 7(C) and 7(D) are unavailable if the responsive information is already publicly known or available through other sources. See, e.g. , J.A. 315-16. To the extent that the district court's denial rested on this belief, the district court was in error. As we explain more fully below, such public knowledge or availability does not necessarily foreclose application of either Exemption 7(C) or Exemption 7(D).

## A.

Exemption 7(C), invoked by the FBI to justify the bulk of its withholdings, authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [. . .] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

In order to determine under Exemption 7(C) whether the production of responsive law enforcement records or information could "rea-

3

sonably be expected to constitute an unwarranted invasion of personal privacy," the public interest in disclosure of the responsive information must be weighed against the privacy interests in the information, see United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989), as the district court correctly recognized. As to the former, FOIA recognizes a public interest only in information bearing on "an agency's performance of its statutory duties." Reporters Committee, 489 U.S. at 773. Thus, for example, in Reporters Committee itself, the Court rejected respondents' assertion of a public interest in the rap sheet of a reputed Mafia crime-boss, even though his company "allegedly had obtained a number of defense contracts as a result of an improper arrangement with a corrupt Congressman," because his rap sheet "[told the Court] nothing about matters of substantive law enforcement policy that are properly the subject of public concern." 489 U.S. at 757, 766 n.18.

On the understanding that much of the information the FBI wishes to withhold in this case under Exemption 7(C) consists of names and identifying information of FBI agents, other government employees, third-party suspects, and third parties mentioned or interviewed in the course of an investigation, the public interest in most, if not all, of the information would appear to be negligible. Correspondingly, there being no compelling allegation of agency corruption or illegality, see SafeCard Services, Inc. v. Securities & Exchange Comm'n, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991),[1] there would appear to be no reason on the record before us to assume that these names and identifying information bear in any way upon "[the] agency's performance of its statutory duties" or "contribute significantly to public understanding of the operations or activities of the government," Reporters Committee, 489 U.S. at 775.

_____

[1] Neely argues that the FBI's alleged knowledge of, and failure to prevent or disclose, the perjurious nature of Giacolone's testimony at Neely's criminal trial constituted agency illegality. However, at oral argument, Neely was unable to say that the FBI had encouraged or suborned Giacolone's alleged perjury, which Giacolone allegedly admitted to only after Neely was incarcerated. We find that Neely's other allegations similarly fail to constitute compelling evidence of agency corruption or illegality.

4

That Neely seeks this information to establish indirectly his own innocence does not alter the fact that there would appear to be no FOIA-cognizable public interest in such information. The innocence of a particular defendant in a particular case "tell[s] us nothing about matters of substantive law enforcement policy that are properly the subject of public concern." And, as the Supreme Court has made clear in no uncertain terms, "the identity of the requesting party" and "the purposes for which the request for information is made" by that party "ha[ve] no bearing on the merits of his or her FOIA request." <u>Report-ers Committee</u>, 489 U.S. at 771. Moreover, as the Court explained in <u>John Doe Agency</u> v. <u>John Doe Corp.</u>, 493 U.S. 146 (1989), "FOIA was not intended to supplement or displace rules of discovery." <u>Id</u>. at 153. It is for these reasons that courts have sensibly refused to recognize, for purposes of FOIA, a public interest in nothing more than the fairness of a criminal defendant's own trial. <u>See</u>, <u>e.g.</u>, <u>Hale</u> v. <u>United States Dep't of Justice</u>, 973 F.2d 894, 901 (10th Cir. 1992) (holding that the public interest in the fairness of a death-row inmate's trial "is not the kind of public interest that compels disclosure under FOIA"), <u>vacated on other grounds</u>, 509 U.S. 918 (1993).

On the other side of the ledger from the likely negligible public interest in this withheld information, the FBI agents, government employees, third-party suspects, and other third parties mentioned or interviewed in the course of the investigation have well-recognized and substantial privacy interests in the withheld information. Among other things, these individuals have a substantial interest in the non-disclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoy-ance, or embarrassment. <u>See</u>, <u>e.g.</u>, <u>Halpern</u> v. <u>FBI</u>, 181 F.3d 279, 296-97 (2nd Cir. 1999); <u>Manna</u> v. <u>United States Dep't of Justice</u>, 51 F.3d 1158, 1166 (3rd Cir.), <u>cert</u>. <u>denied</u>, 516 U.S. 975 (1995); <u>Nix</u> v. <u>United States</u>, 572 F.2d 998, 1005-06 (4th Cir. 1978).

As we noted, it appears that the district court may have discounted these privacy interests because the identities of some or all of the individuals had been publicly disclosed or were publicly available. To the extent that it did do so, this was in error. In <u>Reporters Committee</u>, the Supreme Court rejected the argument that the public availability of information <u>necessarily</u> renders nonexistent the privacy interests in that information protected by Exemption 7(C). There, for example,

5

the Court rejected the claim that the privacy interests in the requested rap sheet "approache[d] zero" merely"[b]ecause events summarized in [the] rap sheet [withheld under Exemption 7(C)] ha[d] been previously disclosed to the public," id. at 762-63. On this reasoning, courts have upheld the assertion of Exemption 7(C) to protect the identities even of individuals who have testified in open court. See, e.g., Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) (holding that FBI agents did not waive the protection afforded their identities by Exemption 7(C) by testifying at plaintiff's habeas proceeding, because "Exemption 7(C) leaves the decision about publicity -- whether and how much to reveal about herself -- in the power of the individual whose privacy is at stake" (citing Reporters Committee, 489 U.S. at 763)).

Because the relevant privacy interests in the information withheld by the FBI in this case under Exemption 7(C) would seem to outweigh the relatively negligible public interest in the information, and because this case would appear to "fit[ ] into a genus in which the balance characteristically tips in one direction," Reporters Committee, 489 U.S. at 776, it is quite likely that, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard, 926 F.2d at 1206.**2**

_____

**2** At oral argument, Neely suggested that United States Dep't of Justice v. Landano, 508 U.S. 165 (1993), sub silentio overruled Reporters Committee. We conclude that Neely's characterization of the continued viability of Reporters Committee, post-Landano, is wrong. Landano simply held that the government is not entitled to a blanket presumption that anyone who provides information to the FBI qualifies as a "confidential source" within the meaning of Exemption 7(D). See 508 U.S. at 181. Therefore, Landano cannot be read as overruling or even undermining Reporters Committee. First, Landano construed a different Exemption -- Exemption 7(D) -- and never purported to decide how the public interest in disclosure should be balanced against the interest in privacy for purposes of Exemption 7(C). Second, Landano cites Reporters Committee approvingly, and specifically approves of extending the "categorical approach" of Reporters Committee to the 7(D) context "when certain circumstances characteristically support an inference of confidentiality." See Landano, 508 U.S. at 177.

6

B.

Exemption 7(D) authorizes agencies to withhold

> records or information compiled for law enforcement pur-
> poses, but only to the extent that the production of such law
> enforcement records or information [. . .] could reasonably
> be expected to disclose <u>the identity of a confidential source</u>,
> including a State, local, or foreign agency or authority or
> any private institution which furnished information on a
> confidential basis, <u>and</u>, in the case of a record or informa-
> tion compiled by criminal law enforcement authority in the
> course of a criminal investigation or by an agency conduct-
> ing a lawful national security intelligence investigation,
> <u>information furnished by a confidential source</u>.

5 U.S.C. § 552(b)(7)(D) (emphases added).

As with the district court's denial of the FBI's Exemption 7(C)
withholding, it appears that the district court may have denied the
FBI's Exemption 7(D) withholding at least in part out of a belief that
that Exemption, too, cannot be claimed to protect the identities of
confidential sources whose identities have previously been disclosed.
To the extent that the district court also denied the Exemption 7(D)
withholding on this basis, it similarly erred. In <u>Radowich</u> v. <u>United
States Att'y, District of Maryland</u>, 658 F.2d 957 (4th Cir. 1981),[3] we
held that "the proscription of involuntary disclosure provided by the
Exemption does not disappear if the `identity' of the `confidential
source' later becomes known." <u>Id</u>. at 960. Indeed, in <u>Landano</u>, the
Supreme Court defined a "confidential source" in terms of the "under-
standing" reached between the informant and the FBI at the time the
information was communicated to the FBI, not in terms of whether
the information subsequently remained non-public, 508 U.S. at 174,
and recognized that a source could remain a "confidential source" for
purposes of Exemption 7(D), even if the source's communication

_____

**3** Although Exemption 7(D) was amended in 1986, the version of 7(D)
in force at the time <u>Radowich</u> was decided did not differ from the present
version in any manner that would affect our analysis.

7

with the FBI is subsequently disclosed at trial or pursuant to the government's <u>Brady</u> obligations. <u>See id</u>. at 173-74.

Nor does public availability effect a waiver of the government's rights under this Exemption. As our sister circuits have held, the statute by its terms does not provide for such waiver. Rather, once the prerequisites of a "confidential source" and a record compiled "in the course of a criminal [or national security] investigation" are satisfied, Exemption 7(D) protects from disclosure "information furnished by [that] confidential source." <u>See Parker</u> v. <u>Dep't of Justice</u>, 934 F.2d 375, 380 (D.C. Cir. 1991) (citing, <u>inter alia</u>, <u>Irons</u> v. <u>FBI</u>, 880 F.2d 1446 (1st Cir. 1989) (<u>en banc</u>)).

If on remand the district court finds that the documents (or portions thereof) in Neely's file withheld solely under Exemption 7(D) do in fact, as the FBI claims, bear evidence "on their face" of "express assurances of confidentiality," Appellant's Reply Br. at 12, then the FBI would most likely be entitled to withhold such documents (or portions thereof) under Exemption 7(D). As the Court assumed in <u>Landano</u>, "a source is confidential within the meaning of Exemption 7(D) if the source `provided information under an <u>express assurance of confidentiality</u> or in circumstances from which such an assurance could be reasonably inferred.'" 508 U.S. at 172 (quoting S. Rep. No. 93-1200, at 13, U.S. Code Cong. & Admin. News pp. 6267, 6291). Moreover, even if the documents themselves do not bear evidence on their face of "express assurances of confidentiality," the FBI may nonetheless be entitled to withhold them if it offers other evidence of "circumstances from which such an assurance [of confidentiality] could be reasonably inferred."

III.

Because "[t]he appellate court is particularly ill-equipped to conduct its own investigation into the propriety of claims for non-disclosure," <u>Van Bourg, Allen, Weinberg & Roger</u> v. <u>NLRB</u>, 656 F.2d 1356, 1358 (9th Cir. 1981), <u>accord Summers</u> v. <u>Dep't of Justice</u>, 140 F.3d 1077, 1080 (D.C. Cir. 1998), we believe it most appropriate that this case be remanded to the district court for further proceedings to determine the extent to which the FBI is entitled to claim the Exemptions from disclosure that it has asserted under the above described

8

standards. Of course, because the number of documents in Neely's FBI file is quite substantial, the district court may in its discretion resort to the well-established practice in FOIA litigation of randomly sampling the documents in question, as it did previously. And the district court would be well within its discretion to require the FBI, within a reasonable period of time, to fully shoulder its responsibility -- which to date it has not done -- to provide specific justifications, above and beyond the mere "7(C)" and "7(D)" notations affixed previously, in order to assist the district court in the discharge of its statutory obligation. This is not to say that the FBI may not avail itself of what it characterizes as categorical withholdings, and we do not understand the district court to have concluded otherwise. In doing so, however, the FBI is obliged to explain to the district court's satisfaction precisely why the particular categories of documents are subject to exemption. The district court was absolutely correct that the explanation afforded by the mere notation on the respective documents is not necessarily sufficient to establish agency entitlement to exemption; such is nothing more than an unadorned statement that the government is entitled to exemption, which at least in this case would appear insufficient. It is the FBI's burden to establish for the district court that the denominated documents in fact include information protectable under the Exemptions. And if Exemptions are claimed categorically, then it is the agency's burden to establish that the documents within the respective categories are in fact subject to exemption.

## CONCLUSION

For the reasons stated, the district court's order releasing Neely's unredacted FBI file is vacated, and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED

9