**BALTIMORE SUN, Plaintiff,**

v.

**UNITED STATES MARSHALS
SERVICE, Defendant.**

**No. CIV. JFM–99–2105.**

United States District Court,
D. Maryland.

Feb. 13, 2001.

Mary R. Craig, Law Office, Towson, MD, for Plaintiff.

Anne L. Weismann, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff, The Baltimore Sun Company ("Sun"), has brought a claim against defendant, United States Marshals Service ("USMS"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Sun alleges that USMS unlawfully denied its reporter's request for information from USMS databases regarding the sale of seized property. In particular, plaintiff challenges USMS's redaction from Property Disposition Reports ("Records") of the following information pertaining to each property: 1) address, 2) court case number, and 3) receiver of the property. USMS counters that redaction of the information from Records given to Sun is supported by FOIA Exemptions 2 and 7(C). For the reasons discussed below, as the motions relate to the properties' addresses, court case numbers, and receivers, USMS's motion for summary judgment is denied and Sun's motion for summary judgment is granted.

## I.

In a letter dated November 2, 1998, Sun reporter Jim Haner ("Haner") made an informal request of USMS for "lists of property auctioned by the agency." (Def.'s Mem. Supp. Summ. J., Ex. A.) Haner indicated in the letter that he wished to use the information to write a story about "the growing trend of drug dealers laundering money through the purchase of cars and real estate." *Id.* Due to his inability to obtain the information through informal methods, Haner made a formal FOIA request for the information on December 10, 1998. (Def.'s Mem. Supp. Summ. J., Ex. C.) Haner requested "copies of ... memoranda, reports, correspondence, contracts, lists or other documents regarding sale or auction ... [of] property seized through Department of Justice investigations in the State of Maryland since 1993." *Id.*

USMS records information about seized property in a database through each stage of seizure, forfeiture, and disposition. (Def.'s Mem. Supp. Summ. J., Ex. I., ¶ 9.) Since 1997, USMS has recorded information about real and personal property seized by law enforcement agencies in the Consolidated Assets Tracking System ("CATS") database. Standard Records from the CATS database indicate the following for each property: asset identification number, value, description (including address), seizure number, asset type, (investigative agency) case number, court case number, dates of seizure, custody receipt, forfeiture, disposal, appraisal, income, sales proceeds, expenses lien amount, net revenue, and Government net equity. *Id.* at ¶¶ 9–10. Prior to 1997, USMS tracked seized property in the Seized Assets management System ("SAMS") database. Standard Records from the SAMS database indicate the following for each property: seized property (court case) number, property category, date of custody, property values, (investigative agency) case number, property identification, description (including address), disposition type, date of disposition, amount of disposition, amount deposited to the asset forfeiture fund, and receiver or buyer (names of individuals or entities). *Id.*

USMS supplied Haner with partially redacted Records. (Def.'s Mem. Supp.

Summ. J., Ex. D.) The asset descriptions were partially redacted, leaving only general descriptions such as "real property" and the city, county, or zip code in which the property is located. USMS redacted the investigative agency case numbers and court case numbers in Records from the CATS database. USMS also redacted the seized property (court case) numbers, investigative agency case numbers, and receivers in Records from the SAMS database records. *Id.* USMS's letter of January 7, 1999[1] explained that redaction of administrative markings was done pursuant to Exemption 2 and redaction of information pertaining to third party individuals was done pursuant to Exemptions 7(C). *Id.*

In a letter dated January 25, 1999, Sun appealed USMS's decision to redact the information. (Def.'s Mem. Supp. Summ. J., Ex. E.) Sun proffered a new reason for its FOIA request in the appeal letter: "monitoring the Marshals [sic] conduct in disposing of real property seized pursuant to forfeiture law." *Id.* The Office of Information and Privacy denied Sun's administrative appeal in an undated letter. (Def.'s Mem. Supp. Summ. J., Ex. F.) After the denial of appeal, USMS supplied Sun with some of the redacted information in a supplemental response dated March, 2000. (Def.'s Mem. Supp. Summ. J., Ex. G.) The supplemental response provides the addresses—but still not the receivers or court case numbers—of five commercial properties. *Id.*

## II.

■■■ FOIA was enacted in 1966 out of concern about the growth of federal bureaucracy and the commensurate potential for increased government secrecy. H.R.Rep. No. 89–1497 (1966). FOIA requires that information be made available to "any person" unless the agency seeking to withhold the information demonstrates that the information belongs to one of nine statutory exemptions. 5 U.S.C. § 552. These exemptions are construed narrowly and in favor of disclosure. *See, e.g., Spannaus v. United States Dep't of Justice*, 813 F.2d 1285, 1288 (4th Cir.1987). The agency seeking to withhold information bears the burden of demonstrating that the document at issue fits into one of the FOIA exemptions. *Id.; Landfair v. U.S. Dep't of Army*, 645 F.Supp. 325, 327 (D.D.C. 1986).

### A.

■■■ Exemption 7(C) authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). USMS asserts that the addresses of the properties and identities of the receivers of the properties are protected from disclosure by Exemption 7(C). Whether production of the unredacted Records could "reasonably be expected to constitute an unwarranted invasion of personal privacy" is determined by weighing "the public interest in disclosure against the privacy interests Congress intended the exemption to protect."[2] *United States*

---

1. Although the date on the letter is "1998," the actual date—as evidenced by the series of letters—is 1999.

2. I need not dwell on a threshold issue to Exemption 7(C), which neither party disputes: whether the information sought was compiled for law enforcement purposes. *See, e.g., Wash. Post Co. v. United States Dep't of Justice*, 863 F.2d 96 (D.C.Cir.1988). I note briefly what constitutes records compiled for law enforcement purposes: "the investigative activities giving rise to the compilation of the records must be related to the enforcement of federal law and there must be a rational connection between the investigative activities and the agency's law enforcement duties." *Western Journalism Center v. Office of the Independent Counsel*, 926 F.Supp. 189, 191 (D.D.C.1996). As defendant has explained in its memorandum, USMS is responsible for

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

■ Courts have long recognized the privacy interest of certain—but not all—individuals in their names and addresses. FBI agents, government employees, third-party suspects, and other third parties mentioned or interviewed in the course of a law enforcement investigation have a recognized privacy interest in their names and addresses. *See, e.g., Spirko v. United States Postal Svc.*, 147 F.3d 992 (D.C.Cir. 1998); *Computer Professionals for Social Responsibility v. United States Secret Service*, 72 F.3d 897, 904 (D.C.Cir.1996); *Freeman v. U.S. Dept. of Justice*, 723 F.Supp. 1115, 1125 (D.Md.1988). Case law indicates that the 7(C) privacy interest generally turns on the possible "harassment, annoyance," "embarrassment and potentially more serious reputational harm" to the third party whose identity is at issue. *Wichlacz v. United States Dep't of Interior*, 938 F.Supp. 325, 333 (E.D.Va. 1996); *SafeCard Services, Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197, 1205 (D.C.Cir.1991) (citations omitted). Therefore, individuals such as subjects, witnesses, informants, and government employees have a substantial interest in nondisclosure of their identities and connection with particular investigations. Their privacy interest is so great, in fact, that the D.C. Circuit has held "categorically that, unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute

compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Services, Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197 (D.C.Cir.1991).

■ Yet there is an important distinction between the names and addresses categorically protected by *SafeCard* and the names and addresses at issue here. As the D.C. Circuit subsequently noted in *Nation Magazine v. United States Customs Service*, the reasoning of *SafeCard* supports the categorical protection only of names and addresses of "individuals who are subjects, witnesses, or informants in law enforcement records." 71 F.3d 885, 896 (D.C.Cir.1995).

> [W]e do not read *SafeCard* as permitting an agency to exempt from disclosure all of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address. Because such a blanket exemption would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files, it would be contrary to FOIA's overall purpose of disclosure, and thus is not a permissible reading of Exemption 7(C).[3]

*Id.* The receivers of the seized properties, therefore, do not possess categorically protected privacy interests in their names and addresses. This is not to say that only subjects, witnesses, or informants have a privacy interest in their names and addresses. Other third parties may have recognizable privacy interests in their

---

"the custody, management, control, and disposition of property seized by or forfeited to the Department of Justice under a number of criminal and civil statutes that authorize the seizure of property," and the Records are "compiled for the enforcement of civil and criminal seizure and forfeiture laws." (Def.'s Mot. for Summ. J., Mem. at 8–9.)

**3.** *See also Ctr. to Prevent Handgun Violence v. United States Dep't of Treasury*, 981 F.Supp. 20, 24 (D.D.C.1997) ("The categori-

cal exclusion from release of names in law enforcement reports applies only to subjects, witnesses, or informants in law enforcement investigations."); *Neely v. Fed. Bureau of Investigation*, 208 F.3d 461, 464 (4th Cir.2000) (citing *SafeCard* for proposition that, absent compelling evidence of agency wrongdoing, "names and identifying information of FBI agents, other government employees, third-party suspects, and third parties mentioned or interviewed" are categorically protected).

identities; however, those other third parties do not enjoy categorical protection.

The privacy interest of the receivers at issue differs substantially from the privacy interests of any individuals—subjects, witnesses, informants, or other third parties—whose privacy interests have been legally recognized in the 7(C) context. Some third parties, such as investigators or informants, are involved due to a conscious decision to assist in the successful completion of law enforcement investigations. Many third parties, such as witnesses or other third parties, become involved in law enforcement investigations due to forces beyond their control. Purchasers of the previously seized property, on the other hand, voluntarily choose to participate in the purchase of property from the United States government in a wholly legal commercial transaction. Unlike other third parties, the purchasers have little to fear in the way of "harassment, annoyance, or embarrassment."

I cannot perceive any reputational harm to an individual stemming from the voluntary purchase of a previously seized property. (Def.'s Reply at 9.) I know of no rational, negative connection the public would make between a legal purchaser of property from the United States government and the unlawful activity of the prior owner that caused the property to be seized. Nor should such individuals "rationally fear that they will be targeted by the prior property owners or their criminal associates." *Id.* Presumably, the previous owners are aware of the addresses of the property they previously owned and could target any current property owners without the Records. Any fear of targeting—rational or otherwise—would be assumed upon occupation of the house, not upon release of the Records. Although the re-

ceivers of the seized property may prefer not to have their identities disclosed, that preference alone is not a persuasive privacy interest.

### B.

██ A public interest bears on the 7(C) calculus if it relates to "an agency's performance of its statutory duties."[4] *Bibles v. Oregon Natural Desert Ass'n,* 519 U.S. 355, 356, 117 S.Ct. 795, 795, 136 L.Ed.2d 825 (1997). USMS is responsible for selling property, both commercial and residential, that has been forfeited under the laws enforced or administered by the United States Department of Justice, its agencies, the Drug Enforcement Administration, the Federal Bureau of Investigation, and the Immigration and Naturalization Service. (Def.'s Mem. Supp. Summ. J., Ex. I.) Access to the names and addresses at issue would enable the public to assess law enforcement agencies' exercise of the substantial government power to seize property, as well as USMS's performance of its duties regarding the disposal of forfeited property. For instance, the public could use the Records to scrutinize the "government's exercise of discretion in determining whether to seize property in any given case," to "evaluate whether the Marshals Service sold [the property] for fair value," and "to determine whether the transactions are arms length, bona fide sales to third persons." (Def.'s Mem. Supp. Summ. J., pp. 16–17.) *Cf. Hopkins v. United States Dept. of Housing and Urban Dev.,* 929 F.2d 81, 88 (2d Cir.1991) ("[D]isclosure of names and addresses ... would shed no light on HUD's performance in enforcing prevailing wage law.") Because obtaining information to act as a "watchdog" of the government is a well-recognized public interest in the FOIA

4. USMS takes exception to the markedly different reasons Sun has offered for its Records request. "The identity of the requesting party has no bearing on the assessment of public interest served by disclosure." *Allnutt v. U.S. Dept. of Justice,* 2000 WL 852455 (D.Md. Oct. 23, 2000) (citing *Reporters Committee,* 489

U.S. at 771, 109 S.Ct. 1468). It logically follows that the particular use that a specific party intends to make of the requested information does not bear on the assessment of the public interest served by disclosure of the information.

context, a valid public interest exists in the names and addresses at issue in this case.[5] *Ctr. to Prevent Handgun Violence v. United States Dep't of Treasury*, 981 F.Supp. 20, 24 (D.D.C.1997).

> A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps, both. Knowledge will forever govern ignorance; And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives.

The Complete Madison 337 (Saul K. Padover, ed.1953). Because there is a valid and important public interest in the Records, and disclosure of that information does not engender potential for future harassment, annoyance, or embarrassment of those individuals who would be identified, Exemption 7(C) does not apply.[6]

### III.

■ Exemption 2 protects from FOIA disclosure information pertaining solely to "the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 covers "routine matters" of "merely internal significance" in which there is little, if any, public interest. *Dep't of Air Force v. Rose*, 425 U.S. 352, 370, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976). Sun does not object to the withholding of internal agency numbers pursuant to Exemption 2. (Pl.'s Mem. Supp. Summ. J., 19.) Sun does, however, object to the withholding of court case numbers. The entirety of the Sun's argument is: "[T]he[ ] [court case numbers] are public

and should be released." *Id.* at 19. Surprisingly, Sun's single sentence is the most developed argument by either party regarding the court case numbers. USMS does not discuss the court case numbers at all. *See generally* Def.'s Mem. Supp. Summ. J.; Def.'s Reply Mem.

The onus is on the withholding agency to demonstrate that the documents at issue fit into a FOIA exemption, and USMS has failed to demonstrate that the court case numbers fit into Exemption 2 or any other exemption. Accordingly, summary judgment is granted in favor of Sun regarding disclosure of the court case numbers.

---

5. Again, plaintiff need not provide compelling evidence of government wrongdoing in light of the inapplicability of the categorical rule of *SafeCard* to these facts. A more general public interest in what a government agency is up to is sufficient here.

6. Defendant argues that disclosure of the properties' addresses and receivers is also protected by Exemption 6. Exemption 6, however, requires even less public interest than Exemption 7(C) to override the privacy interest protected by the exemption. Exemption 7(C) "applies to any disclosure that 'could

reasonably be expected to constitute' an invasion of privacy that is 'unwarranted,' while [Exemption 6] bars any disclosure that 'would constitute' an invasion of privacy that is 'clearly unwarranted.'" *United States Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n. 6, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994). Because the public interest is sufficient to override any privacy interest protected by Exemption 7(C), defendant cannot prevail under Exemption 6 in the alternative.