# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 07-1745

—————

| | |
|---|---|
| Leonard Peltier, | * |
| | * |
| Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of Minnesota. |
| Federal Bureau of Investigation, | * |
| | *   [PUBLISHED] |
| Appellee. | * |

—————

Submitted: March 11, 2008
Filed: April 29, 2009 (corrected 5/01/09)

—————

Before BYE, SMITH, and COLLOTON, Circuit Judges.

—————

PER CURIAM.

Leonard Peltier was convicted by a jury in 1977 on two counts of first-degree murder for his participation in the murder of two Special Agents of the Federal Bureau of Investigation in 1975. He was sentenced to two consecutive terms of life imprisonment, and this court affirmed the convictions and sentence. *United States v. Peltier*, 585 F.2d 314 (8th Cir. 1978) (*Peltier I*). This court later considered several appeals arising from Peltier's collateral attacks on the judgment. *United States v. Peltier*, 731 F.2d 550, 555 (8th Cir. 1984) (per curiam) (*Peltier II*); *United States v. Peltier*, 800 F.2d 772 (8th Cir. 1986) (*Peltier III*); *Peltier v. Henman*, 997 F.2d 461

(8th Cir. 1993); *United States v. Peltier*, 446 F.3d 911 (8th Cir. 2006) (*Peltier IV*). The convictions and sentence ultimately have withstood each challenge.

In 2001, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Peltier requested from the Minneapolis and Chicago field offices of the FBI all records pertaining to himself. In November 2002, dissatisfied with the FBI's response, he filed an action against the FBI seeking an order requiring disclosure of the requested records. The FBI eventually disclosed 70,419 pages of records, but withheld 10,557 pages on the ground that these records were exempt from disclosure under FOIA. The FBI cited, among others, the statutory provisions that exempt disclosure of law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), or "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D).

The FBI moved for summary judgment on the ground that the records withheld were properly exempt from disclosure under FOIA. After considering affidavits submitted by the FBI, and a sample of approximately 500 withheld documents submitted pursuant to an agreement of the parties, the district court[1] concluded that the FBI had properly supported its claimed exemptions under FOIA, and granted the motion for summary judgment with respect to all but one category of documents. The court ordered the FBI to disclose to Peltier any responsive documents regarding Anna Mae Aquash that the FBI previously had disclosed to any other requester under FOIA. As to all other withheld documents, the court ruled in favor of the FBI and dismissed Peltier's complaint. Peltier appeals, and we affirm.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, adopting with elaboration the report and recommendation of the Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

I.

The background for this appeal is chronicled in prior opinions of this court. In brief, on June 26, 1975, two Special Agents of the FBI, Jack Coler and Ronald Williams, were murdered on the Pine Ridge Indian Reservation in South Dakota. At the time, Peltier was on the reservation with a group from the American Indian Movement ("AIM"), which was engaged in a political struggle with members of the reservation over the form of government on the reservation. The FBI agents were attempting to locate and arrest four individuals who were charged with armed robbery and assault with a deadly weapon in a matter unrelated to Peltier. On June 26, after the agents followed a vehicle in which they believed one suspect was riding, Williams advised Coler by radio that the occupants of the vehicle were about to fire on the agents. Firing commenced, and both agents were wounded by bullets fired from a distance. The agents were then killed with a high-velocity, small-caliber weapon fired at point blank range. *Peltier I*, 585 F.2d at 318.

Four persons, including Peltier, were charged with first-degree murder of the FBI agents. Darrell Dean Butler and Robert Eugene Robideau were acquitted by a jury, and the government dismissed charges against James Theodore Eagle. After Peltier was extradited from Canada, he was tried and convicted by a jury on both counts of murder. The government's case was presented on alternative theories that Peltier personally fired the fatal shots, and that he aided and abetted the murders. *Henman*, 997 F.2d at 465, 469-70. In affirming the convictions, this court observed that the case against Peltier was "primarily circumstantial," *Peltier I*, 585 F.2d at 319, but that the evidence of Peltier's guilt was "strong." *Id*. at 325.

Peltier's defense theory at trial was that agents of the FBI had "conspired to manufacture evidence against him, resorting to threats, intimidation, and subornation in an effort to secure his conviction." *Id*. at 328. The jury nonetheless convicted, and this court held that the trial court's rulings on evidence and jury instructions did not

-3-

deprive Peltier of his rights to compulsory process and a fair trial as he sought to pursue his theory of defense. This court stated that the use of affidavits of Myrtle Poor Bear in the Canadian extradition proceedings was "a clear abuse of the investigative process by the F.B.I," *id.* at 335 n.18, but observed that Peltier did not claim that he was extradited solely on the basis of Poor Bear's affidavits, or that the other substantial evidence presented was insufficient to warrant extradition. *Id.* at 335. With respect to Peltier's contention that the FBI attempted to manufacture evidence against Jimmy Eagle by concocting witness statements and soliciting assistance from jailhouse informants who had contact with Eagle, this court concluded that "there was no real proof that the F.B.I. solicited statements from the four cellmates." *Id.* at 333. Peltier later sought to raise other allegations of government misconduct in a second motion to vacate his convictions under 28 U.S.C. § 2255, but these claims were dismissed as an abuse of the writ, because they could have been raised in a previous proceeding and did not tend to establish innocence. *Henman*, 997 F.2d at 472-74.

After the convictions were affirmed, Peltier obtained through the Freedom of Information Act thousands of documents regarding the government's investigation of his case. Based on these documents, Peltier moved to vacate the judgment and for a new trial pursuant to 28 U.S.C. § 2255, alleging primarily that the government violated his right to due process of law by failing to disclose exculpatory evidence. Most allegations of prejudicial concealment were dismissed without a hearing, but this court directed an evidentiary hearing with respect to one FBI teletype that was not available to Peltier until his post-conviction FOIA action. *Peltier II*, 731 F.2d at 555. The trial court denied relief, and this court ultimately concluded that while the FBI teletype was favorable to Peltier and would have allowed him to cross-examine certain witnesses more effectively, there was no reasonable probability that the jury would have acquitted Peltier if the new evidence had been available at trial. *Peltier III*, 800 F.2d at 775-80.

-4-

In recent years, Peltier has requested documents pertaining to himself from various FBI field offices. In correspondence with the Department of Justice, Peltier's counsel has asserted, among other things, that "the public has a strong interest in determining whether the FBI used wrongful investigative techniques and framed Mr. Peltier." J.A. 41. This litigation arises from two of those FOIA requests, directed to the Minneapolis and Chicago field offices.

In the district court, Peltier objected to the FBI's withholding of certain documents from sub-file N of the main file in Minneapolis regarding the investigation of the murders. This sub-file included twenty-one volumes of what the FBI described as "informant information." J.A. 30. The district court considered Peltier's objections in light of affidavits submitted by the FBI's Section Chief of the Record/Information Dissemination Section, Records Management Division, and a sample of documents that the court reviewed *in camera*. In a joint status report and proposed summary judgment briefing schedule, the parties stipulated that "[g]iven the voluminous number of responsive records released to plaintiff, the parties have agreed that a representative sample of approximately 500 pages of records would be submitted to the Court for review in conjunction with defendant's [affidavits]." R. Doc. 47. The parties agreed that ninety percent of these sample documents would be obtained from sub-file N at the Minneapolis field office, and ten percent would be obtained from a file pertaining to the ongoing investigation of the murder of Anna Mae Aquash, a member of the American Indian Movement in the 1970s. *See United States v. Looking Cloud*, 419 F.3d 781 (8th Cir. 2005) (affirming conviction for the first-degree murder of Ann Mae Aquash).

After examining these materials, the district court concluded that the FBI's claims of exemptions were adequately supported, and that the agency properly withheld documents from sub-file N. In particular, the court ruled that the FBI properly withheld documents based on Exemption 1 relating to classified information, 5 U.S.C. § 552(b)(1), Exemption 2 for information related to internal personnel rules

and practices of the FBI, *id.* § 552(b)(2), Exemption 3 for grand jury materials protected by statute, *id.* § 552(b)(3), Exemption 7(C) for law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C), Exemption 7(D) for law enforcement records that could reasonably be expected to disclose the identity of a confidential source, *id.* § 552(b)(7)(D), and Exemption 7(F) for law enforcement records that could reasonably be expected to endanger the life or physical safety of any individual, *id.* § 552(b)(7)(F).

## II.

## A.

Peltier's lead argument on appeal is that the district court erred by failing to review *in camera* all of the 10,557 pages withheld by the FBI to determine whether they are exempt from disclosure under FOIA. The statute provides that the court "*may* examine the contents of agency records *in camera*." 5 U.S.C. § 552(a)(4)(B) (emphasis added). This provision is "discretionary by its terms, and is designed to be invoked when the issue before the District Court could not otherwise be resolved; it thus does not mandate that the documents be individually examined in every case." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). We review the district court's decision on *in camera* review for abuse of discretion. *See Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008).

We have said that "[t]he role of *in camera* inspection . . . should be limited, for it is contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence produced openly in court." *Cox v. Dep't of Justice*, 576 F.2d 1302, 1311 (8th Cir. 1978). The district court's "primary role" is "to review the adequacy of the affidavits and other evidence presented by the Government in support of its position, utilizing in camera examination of the [documents] as an aid in determining

whether the government's affidavits are accurate and made in good faith." *Id*. at 1312. So long as the court has no reason to question the good faith of the agency, the court is entitled to accept the credibility of the affidavits. *Id*.

Peltier's position is that evidence of the FBI's "bad faith" in connection with the investigation and prosecution of the underlying murder case, rather than evidence of bad faith in connection with the response to these FOIA requests, required the district court to examine all of the withheld documents *in camera*. He relies on a decision of the Sixth Circuit in *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994), which reasoned that "[e]ven where there is no evidence that the agency acted in bad faith with regard to the FOIA action itself there may be evidence of bad faith or illegality with regard to *the underlying activities* which generated the documents at issue." *Id*. at 242 (emphasis added). The *Jones* court indicated that *in camera* review is warranted where "it becomes apparent that the subject matter of a request involves activities which, if disclosed, would publicly embarrass the agency or that a so-called 'cover-up' is presented," such that "government affidavits lose credibility." *Id*. at 243. Citing this court's statement that the FBI's use of Myrtle Poor Bear's affidavits to support extradition was a "clear abuse of the investigative process," *Peltier I*, 585 F.2d at 335 n.18, and that the government "improperly withheld" an FBI teletype that was favorable to Peltier, *Peltier III*, 800 F.2d at 775, 779-80, Peltier contends that this case fits the *Jones* model.[2]

---

[2]Peltier also cites a statement of the Tenth Circuit in an appeal from a decision of the United States Parole Commission: "Much of the government's behavior at the Pine Ridge Reservation and in its prosecution of Mr. Peltier is to be condemned. The government withheld evidence. It intimidated witnesses. These facts are not disputed." *Peltier v. Booker*, 348 F.3d 888, 896 (10th Cir. 2003) (per curiam). Elsewhere, the Tenth Circuit explained that all of the facts relied upon by the Parole Commission could be found in previous decisions of the Eighth Circuit. *Id*. at 893. The decisions of this court cited improper government conduct in the use of the Poor Bear affidavits and the withholding of the FBI teletype. In post-conviction proceedings, Peltier raised other allegations of government misconduct, but this court

For several reasons, we are not persuaded that *in camera* review of all withheld documents was necessary. First, Peltier did not argue directly to the district court that *in camera* review of nearly 11,000 documents was required, and we are disinclined to find that the district court abused its discretion by failing to adopt an unusual procedure that was never advocated by the requester. Peltier stipulated that a representative sample of approximately 500 pages of records would be submitted to the court for review in conjunction with the FBI's affidavits. He now says that his agreement to have the court review 500 pages did not foreclose a contention that the court should also conduct *in camera* review of the other approximately 10,000 pages. That may technically be true, but the stipulation certainly could lead a reasonable judge to believe that the parties had reached an accommodation about the degree of *in camera* review that was warranted in the case. In response to the FBI's argument of waiver, Peltier quotes his counsel's oral argument to the district court that it should "set up a briefing schedule and take – and if appropriate, the Court deems it appropriate, review these documents in camera." Reply Br. 12. This statement, however, came prior to the joint stipulation for *in camera* review of 500 pages, and it merely asked the court to review the documents *in camera* if the court "deem[ed] it appropriate." Any suggestion that the district court was *required* to adopt the extraordinary review procedure advocated here should have been urged directly to the district court, so the court would have had an opportunity to consider the proposal and explain its reasons for accepting or rejecting it.

Second, even were we to consider this argument for the first time on appeal, we are satisfied that the district court's procedure was adequate. Peltier points to nothing about the FBI's response to the instant FOIA requests that calls into question the good

did not reach the merits of those allegations, because they could have been presented earlier and did not tend to show innocence. *Henman*, 997 F.2d at 472-74. The specific instances of government misconduct cited in Peltier's brief on this appeal are the use of the Poor Bear affidavits in extradition proceedings and the withholding of the FBI teletype.

faith of the agency. Moreover, accepting the Sixth Circuit's approach in *Jones* for purposes of analysis,[3] we are not persuaded that there is a strong inference that the agency in this case is likely to withhold documents improperly to avoid embarrassment for actions taken in the 1970s. To be sure, this court has identified certain improper actions by the government in connection with Peltier's case, and this history is not irrelevant to the analysis under FOIA. But it should be recalled that one of the two actions declared improper by this court – the withholding of the FBI teletype that could have been used at trial to cross-examine the FBI's ballistics expert – was itself disclosed in response to a previous FOIA request by Peltier. *Peltier II*, 731 F.2d at 552-53. It would be odd to rely on an incident discovered only through the FBI's response to a FOIA request as the basis for a presumption that the FBI is likely to respond in bad faith to this FOIA request, some twenty-five years later.[4]

---

[3]*Jones* presented "an unusual case" that defined the "collateral nature of bad faith in FOIA actions according to a very high standard that would infrequently be met." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 546-47 (6th Cir. 2001). The *Jones* court required *in camera* review of a sample of withheld documents only after the requester's conviction was vacated on the ground that the prosecution had withheld exculpatory evidence that was material to the defense. *See Jones v. A.R. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978).

[4]Peltier argues that the FBI's present-day "bad faith" is demonstrated by its public statements on the FBI website concerning his case. Peltier asserts that the website includes "demonstrably false" assertions that "Peltier's extradition was based on evidence other than Poor Bear's affidavits," and that "Poor Bear was never called to testify at trial, and therefore, her information had nothing whatsoever to do with Peltier's conviction." Appellant's Br. 18-19. Peltier states that this court "found differently" when it concluded that "[t]he use of the affidavits of Myrtle Poor Bear in the extradition process was, to say the least, a clear abuse of the investigative process by the F.B.I." Appellant's Br. 18-19 (quoting *Peltier I*, 585 F.2d at 335 n.18).

The quoted statements from the FBI's website, however, are not at odds with the opinions of this court. It is correct that Poor Bear was not a witness at Peltier's trial. *Henman*, 997 F.2d at 473. With respect to the extradition process, this court explained that while two of Poor Bear's affidavits "were considered by Canadian

Third, the district court *did* employ *in camera* review of more than 500 pages of withheld documents to aid in determining whether the FBI's claims of exemptions were supported and its affidavits made in good faith.  The *Jones* case itself, on which Peltier principally relies, did not mandate *in camera* review of *all* documents withheld by the FBI, even though Jones's request "clearly involve[d] activities which, if disclosed, would publicly embarrass the agency."  *Jones*, 41 F.3d at 243 (internal quotation omitted).  Rather, the court in *Jones* concluded that *in camera* review of a sample comprising 553 pages out of approximately 10,000 pages withheld or redacted, together with the agency's affidavits, provided "sufficient information" to decide whether the FBI properly withheld responsive material.  *Id.* at 244.  Likewise, we believe that the stipulated sample of approximately 500 pages, which resulted in the submission of 569 pages out of 10,557 withheld, J.A. 69-70, was sufficient to create an adequate record for decision by the district court in this case.  We therefore find no reversible error in the district court's failure to conduct an *in camera* review of all withheld documents.

B.

With respect to the specific exemptions at issue, Peltier argues that the district court erred by upholding the FBI's claim under Exemption 7(D), because many informants "waived" their right to confidentiality by testifying in public proceedings. Peltier did not present this argument to the district court.  A party may not raise an issue for the first time on appeal as a basis for reversal, except in narrow circumstances, such as where the "obvious result of following the rule would be a

officials in the extradition proceedings," *Peltier I*, 585 F.3d at 331, "Peltier [did] *not* claim that he was extradited solely on the basis of Myrtle Poor Bear's affidavits or that the other evidence presented to the Canadian tribunal was insufficient to warrant extradition."  *Id*. at 335.  This court further observed that "other substantial evidence of Peltier's involvement in the murders was presented in the extradition proceedings." *Id*.

plain miscarriage of justice or would be inconsistent with substantial justice." *Seniority Research Group v. Chrysler Motor Corp.*, 976 F.2d 1185, 1187 (8th Cir. 1992). Although the Supreme Court has not decided the waiver issue raised by Peltier, *see U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 173-74 (1993), several courts of appeals have held that public testimony does not "waive" the applicability of Exemption 7(D) to information provided to the FBI by a confidential source, or to information that would disclose the identity of a confidential source. *Neely v. FBI*, 208 F.3d 461, 466 (4th Cir. 2000); *Ferguson v. FBI*, 957 F.2d 1059, 1068 (2d Cir. 1992); *Parker v. Dep't of Justice*, 934 F.2d 375, 379-81 (D.C. Cir. 1991); *Irons v. FBI*, 880 F.2d 1446, 1455-56 (1st Cir. 1989) (en banc) (Breyer, J.); *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 208-09 (7th Cir. 1985) (per curiam); *Lame v. Dep't of Justice*, 654 F.2d 917, 925 (3d Cir. 1981). In view of these authorities, we see no basis to conclude that entertaining Peltier's new argument on appeal is necessary to avert a plain miscarriage of justice. We therefore discern no reversible error in the district court's treatment of Exemption 7(D).

C.


Peltier also contends that the district court erred in applying Exemption 7(C), which exempts the production of law enforcement records when it "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As summarized by the district court, the FBI withheld names or other data that would identify the following: "(1) third parties [who were] merely mentioned within the records released to plaintiff; (2) persons 'of investigative interest' to law enforcement agencies; (3) persons who assisted in the investigation of [Peltier] with an express assurance of confidentiality; (4) persons who assisted in the investigation of [Peltier] with an implied assurance of confidentiality; and (5) state and local law enforcement personnel." J.A. 190. These persons have "well-recognized and substantial privacy interests in the withheld information." *Neely*, 208 F.3d at 464; *see Kuehnert v. FBI*, 620 F.2d 662, 667 (8th Cir. 1980). The district court

concluded that the privacy interests affected by release of this information outweighed any alleged public interest in disclosure. We accept the district court's factual findings unless they are clearly erroneous, and we review the applicability of the FOIA exemption *de novo*. *See Wickwire Gavin P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004).

Exemption 7(C) "requires the courts to balance the competing interests in privacy and disclosure," *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). In this balancing process, "the usual rule that the citizen need not offer a reason for requesting the information must be inapplicable." *Id.* To overcome a legitimate claim of privacy interests under Exemption 7(C), a requester must show that "the public interest sought to be advanced is a significant one," and that "the information is likely to advance that interest." *Id.* "Public interest" in the context of Exemption 7(C) means an interest in "[o]fficial information that sheds light on an agency's performance of its statutory duties," *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989), and "contribute[s] significantly to public understanding of the operations or activities of the government." *Id.* at 775. Where the requester asserts a public interest in improper actions by responsible officials, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. If he does so, then there will exist "a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75. At that point, the court must make a determination regarding "the significance of the public interest and the historical importance of the events in question," which may involve an evaluation of the nexus between the requested documents and the purported public interest served by disclosure." *See id*. at 175.

In his communications with the Department of Justice about these FOIA requests, Peltier urged through counsel that "[t]he public has a strong interest in

-12-

determining whether the FBI used wrongful investigative techniques and framed Mr. Peltier," and that "[t]he documents encompassed by Mr. Peltier's current FOIA request could very well exonerate him and ultimately result in his release from prison." J.A. 41-42. The district court – like a district court in New York evaluating Peltier's FOIA request for FBI records from the Buffalo field office – thought it was "clear" that Peltier's "real interest in seeking disclosure is to gain information to further attack his conviction." J.A. 191 (quoting *Peltier v. FBI*, No. 03-CV-905S, 2005 WL 735964, at \*15 (W.D.N.Y. Mar. 31, 2005), *aff'd*, 218 F. App'x 30 (2d Cir. 2007)). The district court further agreed with the New York district court, as affirmed by the Second Circuit, that "[t]here is no public purpose, however, in disclosing information to assist a prisoner in challenging his conviction." *Id.*

Our court has not addressed whether there is a public purpose under FOIA in the disclosure of information that might aid a prisoner in attacking his conviction. The strongest support for the district court's conclusion is the Fourth Circuit's decision in *Neely*, where the court reasoned "[t]he innocence of a particular defendant in a particular case tells us nothing about matters of substantive law enforcement policy that are properly the subject of public concern," 208 F.3d at 464 (internal quotation omitted), and cited the Supreme Court's declaration that "FOIA was not intended to supplement or displace rules of discovery." *Id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989)). On this basis, the Fourth Circuit concluded that "courts have sensibly refused to recognize, for purposes of FOIA, a public interest in nothing more than the fairness of a criminal defendant's own trial." *Neely*, 208 F.3d at 464.

The Seventh Circuit followed similar logic in *Antonelli v. FBI*, 721 F.2d 615 (7th Cir. 1983), saying "[t]he contention that the public shares Antonelli's interest in ensuring that his convictions were not obtained as a result of a violation of the Constitution is insufficient" to identify a "viable public interest against which the court could weigh the asserted privacy and agency interests at stake." *Id.* at 619

-13-

(internal quotation and citation omitted). And the Fifth Circuit in *Burge v. Eastburn*, 934 F.2d 577 (5th Cir. 1991), concluded that "[a]lthough there is undoubtedly a public interest in fair trials and perhaps, more specifically, in the contents of the alleged statements to the FBI, this is not the kind of public interest that compels disclosure." *Id*. at 580.

Other decisions are more nuanced. The Tenth Circuit, upon which *Neely* relied, did say that "public interest in the fairness of a *particular* trial is not the kind of public interest that compels disclosure under FOIA," *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 901 (10th Cir. 1992) (emphasis in original), *vacated on other grounds*, 509 U.S. 918 (1993), and observed that "[t]he weight of the public interest often will be influenced by the degree to which the governmental conduct has *general applicability*." *Id*. (emphasis added). The court, however, said that it did not "mean to imply that a matter of singular applicability can never be of substantial interest to the public," suggesting that such a situation may exist when "high ranking offices are involved or when the asserted governmental misconduct has unique intrinsic public significance." *Id*. at 901 n.8. The Second Circuit, in a decision cited by the court in Peltier's action involving the Buffalo field office, said that a requester's primary purpose of attacking a conviction "will not necessarily prevent disclosure if there is a coincidental public purpose sufficient to overcome" the asserted privacy interests. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981). Because the requester in Brown failed to show how disclosures concerning a witness in his criminal case would promote the public interest in the "fair and even-handed administration" of the criminal justice system, the court held that any benefits to the public were "too uncertain, indirect, and remote" to overcome the witness's privacy interests. *Id*. at 76 (internal quotation omitted). The First Circuit in *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434 (1st Cir. 2006), said there is no public interest in supplementing an individual's request for discovery in a criminal case, but remarked that if "any of the requested material would reveal how the government responded to informants and others who offer information, a public interest might be served." *Id*. at 441.

We agree that a prisoner may not override legitimate privacy interests recognized in Exemption 7(C) simply by pointing to the public's interest in fair criminal trials or the even-handed administration of justice. If that were true, then "virtually every criminal defendant or target of an FBI investigation would be entitled to FOIA disclosure by insinuating that the government had acted on false information." *Id.* FOIA would be employed as a supplemental discovery mechanism in criminal cases, and the protection of privacy interests in Exemption 7(C) would be virtually eliminated. Nor do we think that the magnitude of public interest in a particular conviction alters the analysis under FOIA. Although Peltier lists various celebrities and public officials who have expressed interest in his case, the "public interest" under FOIA does not depend on the number of persons who are interested in disclosures about a specific conviction.

Peltier contends that disclosure in this case, however, would advance a more general public purpose, given the "gross abuse of power" by the FBI and the "outrageous manufacturing of evidence and flagrant impropriety of the government in producing false affidavits to secure Peltier's extradition." Appellant's Br. 26, 27. Specifically, Peltier argues that release of the records requested under FOIA would "disclose to the public the FBI's unconstitutional and utterly unethical efforts to compromise attorney-client communications of AIM members by using informants." Reply Br. 19. He refers to counterintelligence tactics used by the FBI against AIM in the 1970s, and cites in particular the activities of Douglass Frank Durham, a "confidential source who infiltrated the highest levels of AIM," *id.* at 20, including the circle of AIM leader Dennis Banks. *See United States v. Dodge*, 538 F.2d 770, 777-78 (8th Cir. 1976); *United States v. Crow Dog*, 532 F.2d 1182, 1197-98 (8th Cir. 1976). Peltier quotes Durham's testimony before the United States Senate that although he was advised by the FBI not to engage in any activity that would violate confidences of the defense, "[i]f Dennis [Banks] and I were sitting in a room and an attorney would walk in and start taking, I couldn't jump up and say, 'I can't be here, the FBI won't allow it.'" Reply Br. 20. This argument is consistent with other aspects

of Peltier's FOIA requests, where he adverted to the public's interest in "scrutinizing government intrusions into the rights of its citizens during its investigation of AIM and the excesses engaged in by the FBI during the period in question." J.A. 41.

Accepting, for purposes of analysis, that a public interest might be served by disclosures about a particular conviction where the records also relate to matters of "general applicability" or "unique intrinsic public significance," *Hale*, 973 F.2d at 901 & n.8, we are not persuaded that the interests in disclosure asserted by Peltier are sufficient to outweigh the recognized privacy interests at issue in this case. Peltier interprets the Supreme Court's decision in *Favish* to mean that once a requester produces evidence that government improprieties might have occurred, then the public interest in disclosure outweighs the privacy interests otherwise protected by Exemption 7(C). The Court in *Favish*, however, said only that such a showing by a requester establishes a public interest that must be weighed in the balance. 541 U.S. at 174. Whether disclosure is required still depends on the significance of the asserted public interest and the nexus between the requested documents and the purported public interest. *See id.* at 175.

While improper actions by the government in Peltier's case are a major theme of his appeal, we think that his brief overstates that which has been established and its legal significance in the analysis of Exemption 7(C). The use of the Poor Bear affidavits in the extradition process was found by this court to be a clear abuse of the investigative process. *Peltier I*, 585 F.2d at 335 n.18. But it is also true that Peltier never argued that the other substantial evidence of his involvement in the murders was insufficient to warrant his extradition. *Id.* at 335. The record does not establish that the FBI engineered an extradition for which there was no evidentiary basis. While this court concluded that the FBI teletype disclosed under FOIA after Peltier's conviction was "favorable to Peltier" and "improperly withheld from the defense," *Peltier III*, 800 F.2d at 775, 779, the court also determined that the information was not material to the defense, because there was no reasonable probability that its availability at trial

-16-

would have affected the outcome. *Id*. at 779-80. So while this court has found certain improprieties on the part of the government, they are not so severe and extensive as to create a general public interest in disclosure regarding all matters related to Peltier's case that overrides the privacy interests of third parties recognized by Exemption 7(C).

We are also not convinced that there is a substantial nexus between Peltier's FOIA request and the specific public interest asserted by Peltier – namely, the potential for disclosure of records that would disclose deliberate interference with Peltier's confidential attorney-client relationship. Peltier is in a position to know whether third parties attended meetings between him and his counsel relating to his criminal trial, but he has presented no evidence of any such infiltration. Any benefits to the public from disclosure on the grounds asserted by Peltier are too uncertain and remote to overcome the privacy interests of third parties, confidential sources, and law enforcement personnel. Accordingly, we conclude that the district court committed no error in determining that the FBI's withholding of records under Exemption 7(C) was properly supported.

We note, moreover, that the records to which Peltier directs most of his attention – those including information that could reasonably be expected to disclose the identity of a confidential source and information furnished by a confidential source – are also protected by Exemption 7(D), which does not entail a balancing of public and private interests. *See McDonnell Douglas v. United States*, 4 F.3d 1227, 1257 (3d Cir. 1993). We see no reason to believe that other documents withheld under Exemption 7(C) – i.e., those that would identify law enforcement personnel, persons

of investigative interest, or third parties who were merely mentioned by the FBI during the investigation – would shed light on allegations of deliberate interference with attorney-client communications through the use of confidential informants.

*     *     *

The judgment of the district court is affirmed.

_____